[No. C059423. Third Dist. June 29, 2010.]

DAKOTA BLANKENSHIP, a Minor, etc., Plaintiff and Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Barr & Mudford and Dugan Barr for Plaintiff and Appellant.

Sonnenschein Nath & Rosenthal, Michael Barnes and Manuel Alvarez, Jr., for Defendant and Respondent.

OPINION

**NICHOLSON, J.**—Although an insured may have made a claim with his uninsured motorist (UM) liability insurance carrier for damages suffered in an auto accident with an uninsured motorist, he may not subsequently file a legal action against his UM insurer unless, within two years after the date of the accident, he first files an action against the uninsured motorist, demands arbitration with his UM insurer, or reaches an agreement with his UM insurer. (Ins. Code, § 11580.2, subd. (i) (hereafter section 11580.2(i)).) If he fails to satisfy one of these conditions within the two-year period, he forfeits his claim against his UM insurer. (*Ibid.*)

The issue raised in this appeal is whether the insured's minority excuses noncompliance with the two-year limitations period of Insurance Code section 11580.2(i). We conclude minority does not excuse noncompliance with the limitations period, and we affirm the trial court's judgment in this matter.[1]

FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. Plaintiff, a minor, did not satisfy any of the preconditions imposed on him by section 11580.2(i) within two years of his accident. He nonetheless filed this petition to compel arbitration against his UM insurer. The trial court denied his petition, ruling his minority did not excuse noncompliance with the limitations period of section 11580.2(i).

The specific facts are these: On September 10, 2004, then 13-year-old plaintiff Dakota Blankenship was riding his bicycle on the wrong side of the road when he suddenly turned into traffic. He collided with a car and suffered injuries. The car was driven by Jennifer Outcalt and was owned by Edward McEnespy. Outcalt carried no insurance. McEnespy's insurer denied coverage.

---

[1] Undesignated references to sections are to the Insurance Code.

Blankenship's stepfather, Michael Moore, made a claim on behalf of Blankenship with his auto insurer, defendant Allstate Insurance Company, on January 19, 2005, under his policy's UM coverage.[2]

After reviewing Blankenship's medical records and files, Allstate made an offer of settlement. By letter dated May 25, 2006, and addressed to "the parents of Dakota Blankenship," Allstate confirmed a settlement offer to them of $10,000. Allstate also warned the parents that Blankenship's limitations period would expire on the accident's second anniversary: "Please understand that your son's statute will run on September 10, 2006. Please contact me to resolve your claim."

On the same day, May 25, 2006, Allstate also sent a letter directly to Mr. Moore that reminded him of the two-year deadline to perfect his stepson's claim: "Your child has Two year(s) from the date of the accident, September 10, 2004, to settle the claim, file suit or institute formal arbitration proceedings."

Not the Moores, Blankenship, or anyone representing them contacted Allstate by the accident's two-year anniversary, September 10, 2006. Allstate heard nothing on this claim until August 2007 when Blankenship's attorney informed Allstate he was representing Blankenship. Subsequently, by a letter to Allstate dated October 18, 2007, more than three years after the date of the accident, Blankenship's attorney demanded arbitration.[3]

Before acting on the demand, Allstate requested evidence that Blankenship had satisfied one of the preconditions imposed by section 11580.2(i). In response, Blankenship's attorney forwarded to Allstate a copy of a complaint for damages Blankenship had filed in Shasta County Superior Court against Outcalt and McEnespy on February 26, 2007, more than five months after section 11580.2(i)'s two-year limitations period had expired.

After receiving the complaint, Allstate denied Blankenship's demand for arbitration. Allstate explained that because the complaint against Outcalt and McEnespy had not been filed prior to the two-year anniversary of the accident, and because Blankenship had not settled his claim, filed suit, or instituted arbitration within the two-year limitations period, Blankenship had forfeited any right of recovery under his UM claim.

---

[2] An "uninsured motor vehicle," for purposes of section 11580.2, means, among other things, a motor vehicle that is insured "but the company writing the insurance or bond denies coverage . . . ." (§ 11580.2, subd. (b).)

[3] The determination of whether an insured is entitled to recover damages under the UM policy, and the amount thereof, is made either "by agreement between the insured and the insurer or, in the event of disagreement, by arbitration." (§ 11580.2, subd. (f).)

Blankenship filed a petition to compel uninsured motorist arbitration in Shasta County Superior Court. Following full briefing and a hearing, the trial court denied the petition with prejudice. It determined plaintiff had failed to perfect his claim against Allstate within the time required by section 11580.2(i). Relying on *Allstate Ins. Co. v. Orlando* (1968) 262 Cal.App.2d 858 [69 Cal.Rptr. 702] (*Orlando*), the trial court also held that Blankenship's minority had not excused his noncompliance with section 11580.2(i).

Blankenship appeals, claiming the trial court's decision is in error. He asserts his minority excused his noncompliance with section 11580.2(i). He acknowledges that nothing in the statute's language supports his argument, and he acknowledges that the *Orlando* case, and other authorities cited therein, concluded the limitations period is not excused due to noncompliance on account of minority. Nevertheless, he argues (1) we must interpret section 11580.2(i) such that minority excuses noncompliance because amendments to the statute since *Orlando* was decided imply that minority excuses noncompliance and, he claims, not excusing noncompliance for minority is inconsistent with any purpose the statute may serve.

Additionally, Blankenship claims that (2) excluding minority as a basis for excusing noncompliance violates constitutional guarantees of equal protection, and (3) the language used in Mr. Moore's Allstate policy indicated minority would in fact excuse noncompliance with the limitations period.

We discuss, and reject, each argument.

## DISCUSSION

## I

### *Construction of Section 11580.2(i)*

Blankenship claims we must excuse noncompliance with section 11580.2(i)'s requirement during the two-year limitations period on account of minority due to amendments made to the statute in 1995 and 2003, and the statute's purported purpose. The amendments, however, do not support his argument, and the statute's clear language indicates the Legislature intended that minority would not excuse noncompliance with the limitations period.

█ The trial court's interpretation and construction of a statute is a question of law which we review de novo. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].) The rules of statutory interpretation are well known. "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]

The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

Section 11580.2(i)'s language is clear and unambiguous. The statute reads in pertinent part:

"(i)(1) No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within two years from the date of the accident:

"(A) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction.

"(B) Agreement as to the amount due under the policy has been concluded.

"(C) The insured has formally instituted arbitration proceedings by notifying the insurer in writing sent by certified mail, return receipt requested. . . . [¶] . . . [¶]

"(3) The doctrines of estoppel, waiver, impossibility, impracticality, and futility apply to excuse a party's noncompliance with the statutory timeframe, as determined by the court." (§ 11580.2, subd. (i)(1), (3).)

The statute imposes an absolute obligation on the insured to comply with its mandates or else the insured forfeits his claim. "One of these three events must occur as a condition precedent to the accrual of a cause of action against the insurer." (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1039 [9 Cal.Rptr.2d 381, 831 P.2d 821].) "[T]his statute creates an absolute prerequisite to the accrual of a potential cause of action under the uninsured motorist provision of an insurance policy." (*Id.* at p. 1041.)

The statute does not list minority as one of the grounds for excusing noncompliance with the limitations period. By long-standing rule of statutory construction, the Legislature's omission of a term in a list of terms indicates the Legislature did not intend to include the omitted term, and we cannot add the term to the statute by judicial fiat. " 'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear

legislative intent to the contrary. [Citation.]' " (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 424 [15 Cal.Rptr.3d 643, 93 P.3d 260].)

Blankenship argues there is legislative intent to the contrary, and he assertedly finds it in the 1995 and 2003 amendments to section 11580.2(i). We, however, do not agree.

### A. *1995 amendment*

The 1995 amendment added subdivision (3) to section 11580.2(i), which lists the various grounds for excusing noncompliance with the limitations period. (Stats. 1995, ch. 738, § 1, p. 5523.) The Legislature did not name minority as one of those grounds. Nevertheless, Blankenship argues that minority is a legal disability as a matter of law and renders compliance with section 11580.2(i)'s limitations requirements " 'impossible or impractical,' " two grounds listed in section 11580.2(i)(3).

Blankenship's argument ignores the context in which the 1995 amendment was enacted. Prior to the 1995 amendment, various districts of the Court of Appeal had long established that minority did not excuse noncompliance with the limitations period of section 11580.2(i). (*Orlando, supra,* 262 Cal.App.2d at p. 865 [Second Dist.]; *Republic Indem. Co. v. Barn Furniture Mart, Inc.* (1967) 248 Cal.App.2d 517, 518–520 [56 Cal.Rptr. 609] [Second Dist.] (*Republic Indemnity*); *Pacific Indem. Co. v. Superior Court* (1966) 246 Cal.App.2d 63, 70–72 [54 Cal.Rptr. 470] [First Dist.] (*Pacific Indemnity*); *State Farm etc. Ins. Co. v. Superior Court* (1965) 232 Cal.App.2d 808, 809–811 [43 Cal.Rptr. 209] [Fifth Dist.] (*State Farm*).)[4]

Each of these cases relied upon the Supreme Court's rule of *Artukovich v. Astendorf* (1942) 21 Cal.2d 329 [131 P.2d 831] (*Artukovich*), where the high court, resolving whether minority excused noncompliance with a claims filing statute, concluded that minority does not toll a limitations period or excuse noncompliance unless a statute specifically says so. The court reasoned: "It is true that it has always been the policy of this state and of other states to place minors in a favored class *for certain purposes.* But as pointed out in *Phillips v. County of Los Angeles* [(1934)] 140 Cal.App. 78, 79 [35 P.2d 187], 'The solicitude of the law in protecting a minor in his contractual and other relationships is limited and not general in its application.' . . . [T]here are statutory provisions extending special consideration to minors with respect to the time within which certain proceedings must be commenced (Code Civ. Proc., §§ 328, 352, 1272; Prob. Code, §§ 384, 931),

---

[4] When these cases were decided, the limitations period was one year, and it was contained in subdivision (h) of section 11580.2.

but the special consideration extended is expressly limited to the proceedings therein mentioned. We find no similar provisions extending special consideration to minors in statutes prescribing the time within which claims must be filed or the time within which proceedings must be commenced upon rejected claims either in probate proceedings [citations] or in liquidation proceedings [citations]; and it was held in *Carpenter v. Eureka Cas. Co.* [(1936)] 14 Cal.App.2d 533 [58 P.2d 682], that where such statutes make no exception in favor of minors, none may be implied." (*Artukovich, supra,* 21 Cal.2d at pp. 333–334.)

■ Based on this rule, all of the districts of the Court of Appeal that have considered whether minority excuses noncompliance with section 11580.2(i)'s limitations period concluded it does not. (*Orlando, supra,* 262 Cal.App.2d at p. 865; *Republic Indemnity, supra,* 248 Cal.App.2d at pp. 518–520; *Pacific Indemnity, supra,* 246 Cal.App.2d at pp. 71–72; *State Farm, supra,* 232 Cal.App.2d at p. 811.) Indeed, the Fifth Appellate District of the Court of Appeal specifically held that Code of Civil Procedure section 352, which tolls legal actions on account of minority, does not apply to the limitations period of section 11580.2. (*State Farm, supra,* 232 Cal.App.2d at p. 811.) And *Artukovich* is still good law. (*Rodriguez v. Superior Court* (2003) 108 Cal.App.4th 301, 308–309 [133 Cal.Rptr.2d 294].)

■ Blankenship argues these cases cannot apply because they were decided before the 1995 amendment. To the contrary, those cases apply because the Legislature considered them when it enacted its 1995 amendment and, despite the holding of those cases, it specifically chose not to list minority as one of the grounds excusing noncompliance with the limitations period. "The Legislature is deemed to be aware of judicial decisions already in existence and to have enacted or amended a statute in light thereof. [Citation.] When a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the legislature is aware of the judicial construction and approves of it." (*Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 196 [45 Cal.Rptr.3d 705].)

The Legislature thus knew in 1995 that minority did not excuse noncompliance with the limitations period of section 11580.2(i), and it chose not to include minority in the list of circumstances it stated in the amendment would excuse noncompliance with the limitations period. Because the Legislature did not abrogate the holdings of these prior cases, we must presume it agreed with them and intended that minority would not excuse noncompliance with section 11580.2(i)'s limitations period.

Blankenship argues that even assuming the above discussion to be correct, the Legislature intended minority to excuse noncompliance with the limitations period because (1) it excused noncompliance with the limitations period in the 1995 amendment if performance was impossible or impractical, and (2) minority, Blankenship claims, has been established to be a disability in other circumstances that renders performance impossible or impractical. Thus, he asserts, it must do so here.

However, the authorities Blankenship cites to support his position explain that minority acts as a disability to excuse noncompliance with a limitations period only when the Legislature says so. *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300 [87 Cal.Rptr.2d 358] (*Grell*), states minority tolls a statute of limitations if the Legislature or the courts so declare: "[A] statute of limitations may be 'tolled,' i.e., its operation temporarily suspended during the pendency of a particular condition *specified by statute or judicial decision.*" (*Id.* at p. 1305, italics added.)

*Grell* goes on to explain that it was the Legislature's adoption of Code of Civil Procedure section 352 that defined minority as a disability: "The Legislature has established various provisions tolling the statute of limitations where a person entitled to sue is under a 'disability' at the time the cause of action accrues, making the commencement of an action impossible or impracticable. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 633, pp. 812–813.) Such statutes include, for example, tolling due to plaintiff's minority or insanity (Code Civ. Proc., § 352) . . . ." (*Grell, supra,* 73 Cal.App.4th at p. 1305.)

However, Code of Civil Procedure section 352 does not apply to the accrual requirements of section 11580.2(i). By its own terms, Code of Civil Procedure section 352 applies only to civil actions initiated in a court of law mentioned in chapter 3 of title 2 of part 2 of the Code of Civil Procedure, commencing with Code of Civil Procedure section 335. Compliance with section 11580.2(i) is not a civil action within the scope of that chapter.

Witkin, as cited by *Grell,* also agrees that minority tolls a statute of limitations when Code of Civil Procedure section 352 applies. (See now 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, §§ 696, 697, pp. 916–917.) It is that statute that defines the disability of minority, and, as Witkin also acknowledges, that statute does not apply to section 11580.2(i). (3 Witkin, *supra,* § 697, at p. 917.)

Another authority cited by Blankenship, *Williams v. Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599 [68 Cal.Rptr. 297, 440 P.2d 497] (*Williams*), reached the same conclusion. The Supreme Court

in that case held that Code of Civil Procedure section 352 tolled the statute of limitations on a minor's causes of action against a governmental entity. Notably, the minor in that case had timely complied with the claims filing requirements of the Tort Claims Act despite his minority. (*Williams, supra*, at p. 601.)

■ The high court distinguished its ruling under Code of Civil Procedure section 352 from the law under Insurance Code section 11580.2. Code of Civil Procedure section 352 did not apply under section 11580.2(i) because the latter statute "creates a condition for the preservation of a potential cause of action under an insurance policy and does not fix the time for instituting a civil suit against the insurer after a cause of action has accrued." (*Williams, supra*, 68 Cal.2d at p. 605.)

■ Thus, minority is not a disability rendering performance under section 11580.2(i) impossible or impractical. Minority is a disability only when the Legislature says it is. And the Legislature did not so say with regards to section 11580.2(i). Blankenship's minority certainly did not prevent him from filing a legal action against the uninsured motorist. Similarly, his minority did not prevent him from complying with the claim accrual procedures of section 11580.2(i). Contrary to Blankenship's claim, nothing in the 1995 amendment establishes, impliedly or expressly, that the Legislature intended minority to excuse noncompliance with section 11580.2(i)'s limitations period.

## B. *2003 amendment*

The 2003 amendment to section 11580.2(i) also offers no support for Blankenship. By this amendment, the Legislature extended section 11580.2(i)'s limitations period from one year to two years. (Stats. 2003, ch. 56, § 1.) It followed the Legislature's adoption of an amendment the previous year to Code of Civil Procedure section 335.1, which extended the statute of limitations for negligence actions from one year to two years. (Stats. 2002, ch. 448, § 2.) According to legislative committee reports cited by Blankenship, the 2003 amendment to section 11580.2(i) was designed to eliminate the inconsistency between the two limitations periods. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 333 (2003–2004 Reg. Sess.) Apr. 22, 2003, p. 2.)

Blankenship claims the Legislature, by this amendment, implied that minority would excuse noncompliance with section 11580.2(i)'s limitations period. He argues that because the Legislature extended the limitations period for negligence claims, and because minority tolls the statute of limitations on a negligence cause of action, then, in order for section 11580.2 to be consistent with Code of Civil Procedure section 352, minority must excuse noncompliance with section 11580.2(i)'s limitations period.

Blankenship's argument reads too much into the 2003 amendment. The amendment merely preserved the status quo that existed before the Legislature extended the negligence statute of limitations, including the fact that minority tolled the time to file a negligence legal action but did not excuse noncompliance with section 11580.2(i)'s requirements. Prior to the 2002 and 2003 amendments, a person seeking to recover for damages caused by an uninsured motorist had one year to satisfy the accrual requirements of section 11580.2(i) and one year to file a legal action against the motorist. Minority did not affect the section 11580.2(i) limitations period but it did toll the limitations period for filing a legal action against the motorist. Once the negligence statute was expanded to two years, the Legislature decided to maintain the consistency between the two limitations periods, but no more.

Blankenship claims legislative history supports his argument. It actually explains the amendment's limited purpose. Commenting on the proposed amendment, the Senate Judiciary Committee explained that the inconsistency between the two-year limitations period of Code of Civil Procedure section 352 and the one-year period of section 11580.2 could " 'lead to serious problems. If an insured driver at the time of the incident believes that [the] other driver is insured, she has no reason to make a claim against her own uninsured motorist policy. If the injured person is unable to resolve the claim against the negligent driver, she must file a lawsuit within two years. If the lawsuit is filed two years after (sic) the accident and the injured person learns in fact that the negligent driver was uninsured, it is too late to make a claim against her own policy, rendering the uninsured motorist coverage illusory.' " (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 333 (2003–2004 Reg. Sess.), Apr. 22, 2003, p. 2.)

Thus, the 2003 amendment to section 11580.2(i) merely closed this gap so that an insured who filed a timely legal action against the driver more than one year after the accident might still, if appropriate, recover under his UM coverage. The amendment did not address the gap that exists if a minor waits to file an action against the tortfeasor until he is an adult and after the two-year accrual requirements of section 11580.2(i) have expired.

The amendment does not so much as hint, explicitly or implicitly, that the Legislature intended, for the first time, to excuse noncompliance with section 11580.2(i)'s limitations period on account of minority. There is nothing in this amendment from which we could infer such intent. The amendment sought to preserve the status quo—the insured's ability to file an action against the uninsured motorist and a claim with his own UM coverage insurer within the same limitations period except when the insured is a minor—and nothing more.

This point also defeats Blankenship's claim that not interpreting the 2003 amendment as excusing noncompliance with section 11580.2(i)'s limitations period for minority defeats the purpose of section 11580.2. The purpose of the UM statute is " 'not to make all drivers *whole* from accidents with uninsured drivers, but to make sure that drivers injured by such drivers are protected to the extent that they would have been protected had the driver at fault carried the statutory minimum of liability insurance.' [Citation.]" (*Furlough v. Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 47 [249 Cal.Rptr. 703], original italics.)

██ This broad purpose does not require us to interpret the statute as Blankenship suggests because the language of the statute is clear and unambiguous. "Despite the statute's overall remedial purpose, the statutory language clearly shows that the Legislature intended to impose strict prerequisites and time limits for claims involving uninsured motorists . . . ." (*Juarez v. 21st Century Ins. Co.* (2003) 105 Cal.App.4th 371, 377 [129 Cal.Rptr.2d 418].) It also gives no indication whatsoever that the Legislature intended to excuse minors from complying with those strict time limits. "We cannot ignore this explicit language that demonstrates legislative intent." (*Ibid.*)

As explained above, the Legislature has known for decades that minority did not excuse noncompliance with section 11580.2(i)'s limitations period. Yet, despite amending the statute on numerous occasions, it has never amended the statute, expressly or impliedly, to excuse noncompliance with the limitations period for minority. Thus, the statute's language and its mandate do not include excusing noncompliance with its limitations period for minority. The Legislature repeatedly has made that intent very clear.

██ In short, Blankenship asks us to amend section 11580.2(i) on account of its perceived unfairness to him as a minor. Doing so "invite[s] this court to legislate a statutory amendment by implication in violation of the separation of powers. Courts routinely construe statutes enacted by the Legislature in their role as interpreters of the law. . . . We may not usurp the function of the Legislature by adopting an amendment to the same statute by implication where no amendment was intended." (*Bullard v. California State Automobile Assn.* (2005) 129 Cal.App.4th 211, 221 [28 Cal.Rptr.3d 225].) Blankenship's attempt to excuse compliance with section 11580.2(i)'s requirements on account of minority can be addressed only by the Legislature.

## II

### *Equal Protection Claim*

Blankenship claims section 11580.2(i)'s application to minors violates his constitutional right to equal protection under the laws on two accounts. First, he asserts the limitations period, when applied to minors, arbitrarily discriminates "between the class of persons for whom compliance with the time limit of Insurance Code section 11580.2 is rendered impossible or impractical by minority and the class of persons whose compliance is rendered impossible or impractical by other factors." Second, he claims applying the limitations period to minors discriminates "between the class of minors seeking to recover for injuries under an *under*insured motorist policy on the one hand and the class of minors seeking to recover for injuries under an uninsured motorist policy on the other." (Italics added.) Blankenship is incorrect under both theories.[5]

"[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' [Citations.] Nor does it authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' [Citation.] For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. [Citations.] Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. [Citations.] Further, a legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification.' [Citations.] Instead, a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citations.]" (*Heller v. Doe* (1993) 509 U.S. 312, 319–320 [125 L.Ed.2d 257, 270–271, 113 S.Ct. 2637].)

---

[5] Allstate initially claims Blankenship has forfeited his equal protection arguments as he did not raise them in the trial court. "As a general rule, issues not raised in the trial court will not be considered on appeal. However, 'it is settled that a change in theory is permitted on appeal when "a question of law only is presented on the facts appearing in the record." ' [Citations.]" (*California Horse Racing Bd. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 1169, 1173 [64 Cal.Rptr.3d 222].) Whether this court's, and other courts', interpretations of section 11580.2(i) violate equal protection rights is a question of law that, on the undisputed facts here, can be raised initially on appeal.

Allstate also claims Blankenship's constitutional argument is unnecessary to our disposition of this matter and should not be addressed. However, because Blankenship's attack on the statute's meaning fails, we must next decide whether the statute as interpreted violates equal protection rights.

Section 11580.2(i) does not violate equal protection. By adopting section 11580.2(i), the Legislature created a class of persons who may seek to recover under their own UM insurance coverage. The statute's requirements apply to all such persons, adults and minors, equally. The only persons not subject to the statute's requirements are those who qualify for exception under the legal doctrines of estoppel, waiver, impossibility, impracticality, and futility. These classifications are not unlawful because each is obviously supported by a rational purpose. The statute withstands rational purpose review.

Blankenship first argues the statute unlawfully discriminates between those who are exempt due to impossibility or impracticality, and those who are not exempt because they are minors, a category of persons who, Blankenship claims, are by definition disabled to bring a suit, and therefore it is impossible or impractical for them to comply with section 11580.2(i). But this assertion merely begs the question of whether minority renders performance under section 11580.2(i) impossible or impractical. We have already determined it does not. The Legislature has determined that minority is not a disability for purposes of complying with section 11580.2(i), and there is no evidence here that minority renders compliance with section 11580.2(i) impossible or impractical. Thus, the distinction Blankenship attempts to draw does not exist. A minor is not similarly situated to a person for whom compliance with section 11580.2(i) truly is impossible or impractical.

Second, Blankenship claims the statute unlawfully discriminates between minors who are attempting to recover under their *under*insurance coverage, and minors who are attempting to recover under their UM insurance coverage. Specifically, Blankenship claims the tolling of a minor's action for underinsurance but not the minor's compliance with the accrual requirements of section 11580.2(i) for UM coverage violates equal protection rights. We disagree. The differences between underinsurance and UM coverage demonstrate that minors seeking UM benefits and those seeking underinsurance benefits are not similarly situated.[6]

Underinsurance coverage provides some additional coverage to an insured who is injured by a tortfeasor who has insufficient liability insurance. (*Quintano, supra*, 11 Cal.4th at p. 1053; see generally 1 Clifford, Cal. Uninsured Motorist Law (6th ed. 2009) § 11.10, p. 11-2.) Section 11580.2 requires auto insurers to offer both uninsured and underinsured coverage. (§ 11580.2, subds. (a)(1), (p)(7).)

Of most significance here, a right to underinsured coverage benefits does not exist until the tortfeasor's policy has been exhausted by payment of

---

[6] Section 11580.2(i) does not apply to claims for underinsurance benefits. (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049 [48 Cal.Rptr.2d 1, 906 P.2d 1057] (*Quintano*).)

judgment or settlement to the injured party, and proof of the payment is submitted to the injured party's insurer. (§ 11580.2, subd. (p)(3).) In other words, to recover underinsurance benefits, the injured party must first prosecute a legal action against the tortfeasor to settlement or judgment. Such an action is a mandatory "condition precedent to the accrual of the insured's right to [underinsurance] coverage." (*Quintano, supra*, 11 Cal.4th at p. 1057.)

In addition, an insurer's underinsurance liability is not the policy limit. Instead, it is the difference between the total amount of insurance proceeds available under the tortfeasor's policy and any greater amount of insurance available under the injured party's underinsurance coverage. (§ 11580.2, subd. (p)(4).) Thus, if the tortfeasor is insured for an amount equal to or greater than the underinsured limits of the injured person, the injured party's underinsurance benefits do not apply. (*State Farm Mut. Auto. Ins. Co. v. Messinger* (1991) 232 Cal.App.3d 508, 514 [283 Cal.Rptr. 493].)

The time within which a minor must bring an action against his insurer to compel arbitration of a claim for underinsurance is indirectly tolled on account of minority. This occurs because, as just mentioned, a minor has no claim for underinsurance until he has prosecuted a legal action for injuries against the tortfeasor to judgment or settlement and received payment. And, of course, his time to bring that action is tolled on account of his minority. (Code Civ. Proc., § 352.)

Blankenship claims indirectly tolling a minor's action for underinsurance but not excusing a minor's noncompliance with the accrual requirements of section 11580.2(i) for UM coverage violates equal protection rights. But a rational basis exists for subjecting minors seeking UM benefits to the constraints of section 11580.2(i). Unlike in the underinsured context, a UM insurer's exposure to liability occurs upon what is, or should be, a prompt determination that the tortfeasor is uninsured and the injured party files a claim with his insurer. Hence, the Legislature necessarily and logically intended that UM insurers be placed on notice as quickly as possible of their potential exposure so as to encourage settlement of the claim.

The simple procedures mandated by section 11580.2(i) are akin to the claims filing requirement under the Government Claims Act (Gov. Code, § 810 et seq.). The purpose of the latter is "to give the public entity the opportunity to evaluate the merit and extent of its liability and determine whether to grant the claim without the expenses of litigation." (*Crow v. State of California* (1990) 222 Cal.App.3d 192, 202 [271 Cal.Rptr. 349].) And minors are not

exempt from the Tort Claims Act's claim filing requirement. (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 883 [112 Cal.Rptr. 540, 519 P.2d 588].) Section 11580.2(i) serves the same salutary purposes for UM insurers, and for insureds.

By contrast, the underinsurance carrier is not exposed to liability until a judgment or settlement has been obtained by the injured party against the tortfeasor that exhausts the tortfeasor's insurance in an amount less than the injured party's underinsurance coverage. Because of the potential length of time and attendant uncertainties involved in satisfying these contingencies, the Legislature did not conclude the underinsurance carrier required prompt notice of a potential claim.[7]

Thus, there is no violation of equal protection guarantees. Minority does not render compliance with section 11580.2(i) impossible or impractical, and a rational basis exists for any difference in treatment between minors recovering under their underinsurance coverage and those recovering under their UM coverage.

### III

### *Insurance Policy's Language*

Blankenship claims alleged ambiguities in Allstate's UM insurance policy can reasonably be interpreted to mean Blankenship's obligations under section 11580.2(i) were excused during his minority. He is wrong.

Blankenship relies on two sentences in the policy to support his argument. The first sentence on which he relies states Allstate "will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of . . . bodily injury sustained by an insured person . . . ." Blankenship claims that because he is "legally entitled" to recover damages from the alleged tortfeasor by means of an action that can be filed up until his 20th birthday, then it is reasonable to infer this language entitles him to the same tolling period to preserve his claim against Allstate.

Blankenship raised this particular argument before the trial court, but the court did not address it in its ruling. Where the court is silent on a matter, we

---

[7] This discussion also refutes Blankenship's claim that section 11580.2(i) no longer serves any public purpose. Blankenship claims the statute's purpose was, but is no longer, protection of the insurer's subrogation claim from being time-barred. (See *Quintano, supra*, 11 Cal.4th at p. 1060 and cases cited therein.) He is correct on that point. Since 1963, the insurer's action for subrogation may be brought within three years after the insurer actually pays the injured party. (§ 11580.2, former subd. (f); Stats. 1963, ch. 1750, § 1, p. 3496.) Although section 11580.2(i) may no longer concern itself with the insurer's subrogation rights, it nonetheless continues to fulfill a rational public purpose.

indulge all presumptions in favor of the judgment and presume the court ruled against Blankenship on this point. The burden is on Blankenship to prove error. (*Atlantic Richfield Co. v. State of California* (1989) 214 Cal.App.3d 533, 538 [262 Cal.Rptr. 683].)

Blankenship has not shown the trial court's implied rejection of his interpretation of the policy is in error. Allstate's policy must be read to include the mandates of section 11580.2(i). (§ 11580.05; see *Wildman v. Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 40 [307 P.2d 359].) In light of section 11580.2(i), it is not reasonable to interpret the "legally entitled" statement to excuse a minor from complying with section 11580.2(i).

The second sentence in the policy on which Blankenship relies restates section 11580.2(i)'s requirements. This sentence reads: "No legal action can be brought against us under this coverage unless there is full compliance with all the policy terms *or* unless within one year from the date of the accident: [¶] 1. suit for bodily injury has been filed against the uninsured motorist in a court of competent jurisdiction, [¶] 2. agreement as to the amount due under this coverage has been concluded, or [¶] 3. formal arbitration proceedings have been instituted." (Italics added.)

Blankenship asserts that the phrase before the disjunctive "or," "full compliance with all the policy terms," provides an alternate means for preserving his claim, and means the insured is entitled to the same tolling period to preserve a claim against the insurer as he is to preserve a claim against the uninsured motorist. This, he asserts, is because the phrase does not refer to any particular time limits for preserving a claim.

Blankenship's argument based on the second sentence was not raised at trial. Moreover, Allstate has filed a request that we take judicial notice of a document Allstate claims is an endorsement that amended the sentence Blankenship targets by removing the word "or." Allstate's request indicates the correct interpretation of the clause will involve questions of fact. We do not consider factual arguments raised for the first time on appeal, and this argument is forfeited. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].) For the same reason, Allstate's request for judicial notice is denied as moot.

Even were we to consider Blankenship's argument, we would reject it for the same reason we rejected his initial attack on the policy's language. Allstate's policy must comply with section 11580.2 (§ 11580.05), and we cannot read the policy differently.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Allstate. (Cal. Rules of Court, rule 8.278(a).)

Scotland, P. J., and Raye, J., concurred.