Opinion
FLIER, J.
Abigail Barker appeals the dismissal of her claim against Cari Eileen Garza pursuant to the Drug Dealer Liability Act (DDLA), Health and Safety Code section 11700 et seq., which was based upon the death of her brother due to an overdose of controlled substances allegedly supplied by Garza, a registered psychiatric nurse. The trial court sustained Garza’s demurrer to Barker’s DDLA claim in her second amended complaint (SAC) without leave to amend on the ground that it was untimely pursuant to the one-year statute of limitations in the DDLA. We affirm.
*1452 FACTUAL AND PROCEDURAL BACKGROUND[1]
Because Barker appeals from the sustaining of Garza’s demurrer, we accept as true the facts alleged in the SAC. (Whittemore v. Owens Healthcare-Retail Pharmacy, Inc. (2010) 185 Cal.App.4th 1194, 1197 [111 Cal.Rptr.3d 227].) Barker’s brother, Matthew Steven Barker, died on June 10, 2008, from an overdose of either the drug fentanyl, or a combination of the drugs fentanyl and Klonopin.[2] At the time of Matthew’s[3] death, Barker was a minor; she reached the age of majority in April 2010 [4]
Prior to his death, Matthew suffered from mental illness. At various times he was a patient in the psychiatric unit at Aurora Las Encinas Hospital in Pasadena, California, and between December 2005 and March 2007, Garza was one of the nurses responsible for Matthew’s care. Both while Matthew was in the hospital and after he was discharged, Garza maintained an inappropriate personal relationship with him, and Matthew came to rely on her for assistance when his illness prevented him from properly taking care of himself or exercising proper judgment.
Garza illegally sold or distributed certain drugs and medications to individuals who did not have valid prescriptions, including Matthew. Among them were fentanyl and Klonopin, which she provided to Matthew during an acute relapse of his bipolar disease and a severe period of mania, even though she knew that fentanyl did not treat bipolar disease or other mental illnesses and that Klonopin was not to be used by individuals with a history of addiction. She also knew that improperly administered fentanyl could be fatal, as could a combination of the two drugs. As a result of taking those medications, Matthew died.
Exactly two years after Matthew’s death, on June 10, 2010, Barker, Matthew’s estate, and Matthew’s mother filed a civil complaint against Garza and another defendant, alleging claims for statutory elder abuse, product liability, fraudulent concealment, and wrongful death. On February 9, 2011, *1453 plaintiffs filed a first amended complaint, asserting for the first time claims against Garza pursuant to the DDLA. Plaintiffs subsequently filed the SAC on August 11, 2011, which maintained their DDLA claims against Garza.
Garza demurred to the SAC, arguing, inter alia, that plaintiffs’ DDLA claims were barred by the one-year statute of limitations in Health and Safety Code section 11714, subdivision (a). As relevant here, Barker argued that her DDLA claim was timely because the statute of limitations was tolled during the period she was a minor pursuant to Code of Civil Procedure section 352, subdivision (a) (section 352(a)).[5] The trial court sustained the demurrer without leave to amend, rejecting Barker’s tolling argument and finding her DDLA claim untimely. The trial court also sustained the demurrer as to Barker’s other claims and an order of dismissal followed. Barker has appealed only the dismissal of her DDLA claim.[6]
DISCUSSION
On appeal, Barker does not contend that her DDLA claim accrued any later than the date of Matthew’s death, June 10, 2008. Absent tolling, the one-year statute of limitations in Health and Safety Code section 11714, subdivision (a) expired on June 10, 2009, and Barker’s assertion of her DDLA claim on February 9, 2011, was untimely. We thus address only two narrow issues: whether the trial court correctly concluded that the limitations period in Health and Safety Code section 11714, subdivision (a) was not tolled until Barker reached the age of majority; and alternatively, whether section 11714, subdivision (b) tolled Barker’s claim until the expiration of the time in which Garza could have been prosecuted for controlled substance offenses. We conclude that the trial court properly refused to apply minority tolling to Barker’s DDLA claim. Further, we find that Barker waived her argument under section 11714, subdivision (b). Even if not, we hold that section 11714, subdivision (b) does not apply to her claim because Garza was never convicted of a criminal offense involving an illegal controlled substance.[7]
*1454 1. Standard of Review
We review de novo the sustaining of a demurrer. (Sprinkles v. Associated Indemnity Corp. (2010) 188 Cal.App.4th 69, 75 [114 Cal.Rptr.3d 887].) “ ‘In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. “We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.” [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]’ ” {Ibid.) “When a complaint shows on its face that it is barred by a statute of limitations, a general demurrer may be sustained and a judgment of dismissal may be entered.” (McGee v. Weinberg (1979) 97 Cal.App.3d 798, 802 [159 Cal.Rptr. 86] (McGee)', see Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist. (2012) 206 Cal.App.4th 1036, 1044 [142 Cal.Rptr.3d 276].)
2. The Statute of Limitations for DDLA Claims Is Not Tolled During Minority
The applicability of minority tolling under the DDLA is one of statutory interpretation, and we are guided by well-established principles. “[0]ur goal is ‘to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.’ ” (Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd. (2005) 35 Cal.4th 1072, 1087 [29 Cal.Rptr.3d 234, 112 P.3d 623] (Coachella Valley).) First, we must look to the words of the statute, which generally provide the most reliable indicator of legislative intent. (Vafi v. McCloskey (2011) 193 Cal.App.4th 874, 880 [122 Cal.Rptr.3d 608] (Vafi).) If the statutory language is unambiguous, then we presume the Legislature meant what it said and our inquiry ends. (Ibid.) We give words in a statute their plain and commonsense meaning, and we avoid a construction that would produce absurd results, which we presume the Legislature did not intend. (Ibid.) We also “do not construe statutes in isolation; rather, we construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies.avoided.” (Coachella Valley, supra, at p. 1089.)
A. Statutory Framework
i. The DDLA
Enacted in 1996, the DDLA created a “civil remedy for damages to persons in a community injured as a result of the use of an illegal controlled *1455 substance.” (Health & Saf. Code, § 11701.) The statute was intended to serve several purposes: to enable plaintiffs “to recover damages from those persons in the community who have joined the marketing of illegal controlled substances”; “to shift, to the extent possible, the cost of the damage caused by the existence of the market for illegal controlled substances”; “to establish the prospect of substantial monetary loss as a deterrent to those who have not yet entered into the distribution market for illegal controlled substances”; and “to establish an incentive for users of illegal controlled substances to identify and seek payment for their own treatment from those dealers who have sold illegal controlled substances to the user in the past.” (Ibid.; see Health & Saf. Code, § 11702.) The statute created a cause of action against a “person who knowingly participates in the marketing of illegal controlled substances” (§ 11704), and it confers standing on a broad array of plaintiffs, including “[a] parent, legal guardian, child, spouse, or sibling of the individual controlled substance user,” “[a]n individual who was exposed to an illegal controlled substance in útero,” and employers and other entities (§ 11705), as well as individual users under certain conditions (§ 11706).
As broad as the potential class of plaintiffs is under the DDLA, the window of time within which they can sue is narrow. The DDLA imposes a one-year statute of limitations on all claims following accrual and provides for tolling in only one circumstance: “(a) Except as otherwise provided in this section, a claim under this division shall not be brought more than one year after the defendant furnishes the specified illegal controlled substance. A cause of action accrues under this division when a person who may recover has reason to know of the harm from use of an illegal controlled substance that is the basis for the cause of action and has reason to know that the use of an illegal controlled substance is the cause of the harm, [f] (b) For a defendant, the statute of limitations under this section does not expire until one year after the individual potential defendant is convicted of a criminal offense involving an illegal controlled substance or as otherwise provided by law.” (Health & Saf. Code, § 11714.)
ii. Section 352(a)
Title 2 of part 2 of the Code of Civil Procedure prescribes the limitations periods during which “[c]ivil actions, without exception,” must be commenced after they accrue, “unless where, in special cases, a different limitation is prescribed by statute.” (§ 312.) Chapter 3 of that title and part (chapter 3) sets forth the limitations periods for actions other than for the recovery of real property. (§§ 335-349.4.) Section 352 appears in chapter 4 of that title and part, which sets forth certain general provisions applicable to limitations periods, including grounds for tolling. (See, e.g., §§ 351-356.) Section 352(a) states that, “[i]f a person entitled to bring an action, mentioned in Chapter 3 *1456 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action.”
B. Minority Tolling Under the DDLA
Statutes of limitations reflect a legislative policy to “promote justice and prevent the assertion of stale claims after the lapse of long periods of time.” (McGee, supra, 97 Cal.App.3d at p. 804.) “ ‘ “The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.” ’ ” (Romano v. Rockwell Internat., Inc. (1996) 14 Cal.4th 479, 488 [59 Cal.Rptr.2d 20, 926 P.2d 1114].)
Section 352(a) embodies an exception to this policy by “effectuating] a deep and long[-]recognized principle of the common law and of this state: children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations.” (Williams v. Los Angeles Metropolitan Transit Authority (1968) 68 Cal.2d 599, 602 [68 Cal.Rptr. 297, 440 P.2d 497] (Williams).) However, section 352(a) is not absolute; it is limited to actions “mentioned” within chapter 3 of the Code of Civil Procedure. (Blankenship v. Allstate Ins. Co. (2010) 186 Cal.App.4th 87, 97 [111 Cal.Rptr.3d 528] (Blankenship) [“By its own terms, . . . section 352 applies only to civil actions initiated in a court of law mentioned in chapter 3 ... of the Code of Civil Procedure, commencing with . . . section 335.”].)
Although the DDLA appears in the Health and Safety Code, Barker contends that her DDLA claim is “mentioned” in chapter 3 of the Code of Civil Procedure, and therefore is subject to section 352(a), because it is an action upon a statute as provided in section 338, subdivision (a) or section 340, subdivision (a).[8] We disagree. When multiple statutes of limitations may apply to a claim, “a specific statute of limitations takes precedence over a general one, even though the latter 1 “would be broad enough to include the subject to which the more particular provision relates.” [Citation.]’ ” (Vafi, *1457 supra, 193 Cal.App.4th atp. 880; see David M. v. Beverly Hospital (2005) 131 Cal.App.4th 1272, 1279 [32 Cal.Rptr.3d 649] [applying statute of limitations and tolling provisions in § 340.5 for tort claims against health care providers over more general provisions in §§ 338 and 352]; Estate of Mason (1990) 224 Cal.App.3d 634, 638 [274 Cal.Rptr. 61] [applying statute of limitations in Prob. Code over more general statute of limitations in Code Civ. Proc., § 337 for actions based on written instruments].) The DDLA contains its own limitations period, so that more specific provision applies to Barker’s DDLA claim over the more - general provisions in chapter 3 of the Code of Civil Procedure. Because Barker’s claim does not fall within chapter 3, section 352(a) does not apply to toll her claim. (See § 312.)
The language, structure, and purpose of the DDLA also convince us that the Legislature did not intend to toll DDLA claims for minors. In Health and Safety Code section 11714, subdivision (a), the Legislature provided that, “[e]xcept as otherwise provided in this section, a claim under this division shall not be brought more than one year after the defendant furnishes the specified illegal controlled substance” once the claim has accrued. (Italics added.) The phrase “in this section” refers to Health and Safety Code section 11714, subdivision (b), which states that the limitations period does not expire until one year after an “individual potential defendant is convicted of a criminal offense involving an illegal controlled substance or as otherwise provided by law.”
“ ‘[I]f exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.’ ” (Vafi, supra, 193 Cal.App.4th at p. 881; see Blankenship, supra, 186 Cal.App.4th at p. 94 [“By long-standing rule of statutory construction, the Legislature’s omission of a term in a list of terms indicates the Legislature did not intend to include the omitted term, and we cannot add the term to the statute by judicial fiat.”].) By delineating one ground for tolling and providing that all other claims “shall not be brought” more than one year after accrual, the Legislature intended to limit tolling to that one circumstance and exclude all others, including tolling based on a plaintiff’s minority.
Both Barker and the dissent rely on Williams to avoid this conclusion. In that case, a minor sued a public entity for negligence and timely filed a claim with the entity, but failed to timely file his lawsuit under section 342, which required him to commence his lawsuit against a public entity within the time period set forth in Government Code section 945.6. (Williams, supra, 68 Cal.2d at p. 601.) The public entity argued that the plaintiff’s claim was untimely and not tolled by section 352, but the Supreme Court disagreed. First, the court held that section 352 applied because the plaintiff’s claim was expressly “mentioned” in chapter 3 of the Code of Civil Procedure as a claim *1458 against a public entity. (Williams, at pp. 601-602.) As a result, the plaintiff’s claim was “protected until majority, no matter what statutory limitations apply to litigants other than minors.” (Id. at p. 601.) Second, the court rejected the argument that the Legislature’s inclusion of tolling in Government Code section 945.6 for felons implicitly negated application of tolling in Code of Civil Procedure section 352. (Williams, at p. 603.) The court reasoned that the maxim of expressio unius est exclusio alterius for statutory construction did not apply because section 352 unambiguously provided for tolling of any claim mentioned in chapter 3. (Williams, at p. 603.) And third, the legislative history of Government Code section 945.6 did not suggest that the Legislature intended to preclude tolling based on minority for claims against public entities. (Williams, at p. 607.)[9]
Williams is distinguishable. In Williams, the statute of limitations for the plaintiff’s claim was fixed by section 342 (which expressly incorporated the limitations period in Gov. Code, § 945.6), which falls within chapter 3, so section 352(a) applied by its plain terms. (Williams, supra, 68 Cal.2d at p. 602 [“Indubitably, chapter three does ‘mention’ this kind of action; it specifically refers to an action against a public entity for which a claim must be presented; it specifically prescribes the limitation applicable to such an action.” (first italics in original, second italics added)].) As a result, the high court was unwilling to find minority tolling implicitly abrogated by enactment of tolling for felons. In contrast, in the DDLA, the Legislature exercised its authority under section 312 to remove claims from the more general limitations periods in chapter 3 and fix a statute of limitations specific to DDLA claims, and we have found no authority to suggest a claim not subject to any limitations period in chapter 3 can nevertheless still be “mentioned” in chapter 3 to trigger section 352(a) minority tolling. Our inquiry is thus whether the Legislature intended section 352(a) to apply, notwithstanding a claim under the DDLA is not subject to a limitations period fixed by chapter 3.[10]
*1459 Unlike the implicit negation in Williams, the language in Health and Safety Code section 11714, subdivision (a) requiring that DDLA claims “shall not be brought more than one year” after accrual except as set forth in subdivision (b) of that section expresses a clear legislative judgment that the one-year statute of limitations applies to all DDLA claims, except in one circumstance. (See Bledstein v. Superior Court (1984) 162 Cal.App.3d 152, 158-159 [208 Cal.Rptr. 428].) In Bledstein, the court concluded that section 352(a) did not directly apply to toll the limitations period in section 340.6 for legal malpractice claims, which would “ ‘in no event’ ” exceed four years unless the period was tolled for the reasons delineated, although the court ultimately concluded that tolling based on a “ ‘legal or physical disability’ ” in section 340.6 was broad enough to encompass the grounds set forth in section 352(a). (Bledstein, at pp. 156-162.) The court distinguished Williams because section 340.6 contained a tolling provision for legal disabilities and because the statute in Williams did not contain language similar to the “in no event” phrase in section 340.6 limiting tolling to the grounds specified. (See Bledstein, at p. 159; see also Jocer Enterprises, Inc. v. Price (2010) 183 Cal.App.4th 559, 569-570 [107 Cal.Rptr.3d 539] [following Bledstein]; cf. Farb v. Superior Court (2009) 174 Cal.App.4th 678, 683 [94 Cal.Rptr.3d 586] [finding that language that limitations period in Code Civ. Proc., § 366.2 “ ‘shall not be tolled or extended for any reason except’ ” in enumerated circumstances excluded minority tolling under § 352].) Similar to the “in no event” language in Bledstein and unlike in Williams, the limiting language in the DDLA demonstrates an intent to create one express tolling exception and exclude others.
Two additional features of the DDLA distinguish it from Williams and support our conclusion that minority tolling does not apply. First, the Legislature conferred standing on certain minors to sue for DDLA violations, such as infants who were exposed to drugs in útero and other children of drug users. (Health & Saf. Code, § 11705; see § 11701 [identifying one class of plaintiffs as “infants injured as a result of exposure to controlled substances in útero (‘drug babies’)”].) Having enabled minors to sue under the DDLA while also imposing a strict one-year limitation period on DDLA claims, the Legislature would have included minority tolling if it had intended to toll the limitations period for minors.
Second, when enacting Health and Safety Code section 11714, subdivision (b), the Legislature carefully considered the interests implicated by tolling the time leading to a defendant’s conviction, which might delay a claim for five or more years and “make it very difficult for a dealer to contest the case.” (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 1754 *1460 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t-v.)[11] Depending on the age of the minor when his or her cause of action accrues, a minor’s DDLA claim could be tolled up to 18 years before the limitations period begins to run. (Fam. Code, § 6500 [defining minors as under the age of 18].) We think the Legislature would not have expressly addressed the policy implications for tolling for criminal convictions while only implicitly accepting minority tolling, which even more directly implicates the policy against stale claims.[12]
The dissent argues Health and Safety Code section 11714, subdivision (b) is not a “tolling” provision at all, but instead “creates ... an enlarged limitations period applicable to only certain defendants,” and, as a result, cannot be used to infer legislative intent to exclude all other grounds for tolling. (Dis. opn., post, at p. 1469.) That interpretation does not comport with the language of the statute or its legislative history.
As the dissent correctly explains, under Health and Safety Code section 11704, subdivision (a), persons liable under the DDLA are those who “knowingly participate[] in the marketing of illegal controlled substances.” “ ‘Participate in the marketing of illegal controlled substances’ ” is defined as “to transport, import into this state, sell, possess with intent to sell, furnish, administer, or give away, or offer to transport, import into this state, sell, furnish, administer, or give away a specified illegal controlled substance.” (Health & Saf. Code, § 11703, subd. (g).) In turn, a person entitled to bring an action under the DDLA may seek damages from “(1) [a] person who sold, administered, or furnished an illegal controlled substance to the individual user of the illegal controlled substance,” or “(2) [a] person who knowingly participated in the marketing of illegal controlled substances,” if certain requirements are satisfied, including that “[t]he defendant’s participation in *1461 the marketing of illegal controlled substances was connected with the same type of specified illegal controlled substance used by the individual user of an illegal controlled substance, and the defendant has been convicted of an offense for that type of specified illegal controlled substance.” (Health & Saf. Code, § 11705, subd. (b)(1), (2).) Subdivision (c) of section 11705 specifies the phrase “[‘jknowingly participated in the marketing of illegal controlled substances’ ” used in subdivision (b) means “a conviction for transporting, importing into this state, selling, possessing with intent to sell, furnishing, administering, or giving away, or offering to transport, import into this state, sell, furnish, administer, or give away a specified illegal controlled substance or a quantity of marijuana specified in subdivision (e), (f), (g), or (h) of Section 11703, which are separate in time.”
In the dissent’s view, these provisions “distinguish[] two groups of potential civil defendants: (1) Those who sell or furnish drugs to an individual user and (2) those who participate in other marketing activities by requiring that the latter have been convicted of a drug offense arising from their participation.” (Dis. opn., post, at pp. 1470-1471.) That is correct, but we disagree that distinction carries over to Health and Safety Code section 11714, with subdivision (a) only applying to the former category of individuals, and subdivision (b) only applying to the latter.
First, Health and Safety Code section 11714, subdivision (a) is not limited to only defendants who directly sell or furnish illegal controlled substances to individual users. It merely provides a claim may not be brought more than one year after the defendant “furnishes” the drugs. As noted above, market participant defendants are liable if they “knowingly participated in the marketing of illegal controlled substances” (Health & Saf. Code, § 11705, subd. (b)(2)) and the phrase “participate[] in the marketing of illegal controlled substances” includes selling and furnishing drugs (Health & Saf. Code, § 11703, subd. (g)). Thus, both categories of defendants can “furnish” controlled substances to trigger the statute of limitations in section 11714, subdivision (a).
Second, the language of Health and Safety Code section 11714, subdivision (b) is not limited to market participant defendants who must have suffered (or will suffer) separate predicate convictions to trigger their liability under Health and Safety Code section 11705, subdivision (b)(2). To the contrary, the language is broad, applying to “a defendant” and covering any “criminal offense involving an illegal controlled substance” (§ 11714, subd. (b)), which could very well include convictions for the direct sale or furnishing of an illegal controlled substance to a user, who then injures a victim suing under the DDLA. An “individual potential defendant” in subdivision (b) likewise could be any defendant liable under the DDLA, *1462 whether as a market participant or a direct seller, but who has not yet been named in the lawsuit. And even if subdivision (b) is susceptible to the dissent’s interpretation, at most that renders the statute ambiguous, and the legislative history makes clear it was not intended to be limited to market participant defendants. The hypothetical used in the Senate committee analysis as an example of the operation of section 11714, subdivision (b) involved a prosecution and conviction for the sale of a controlled substance to the user, who then injures the victim, i.e., a direct seller defendant. (See, ante, fn. II.)[13] Thus, section 11714, subdivision (b) is no more than a tolling provision applying to all defendants under the DDLA. Having included it in the statute alongside a directive that a one-year limitations period applies “[e]xcept as otherwise provided in” subdivision (b), the Legislature excluded minority tolling under section 352(a).
We recognize the strong public policy in protecting minors from the sometimes harsh application of statutes of limitations. (Williams, supra, 68 Cal.2d at p. 602.) We think it is clear, though, that the Legislature did not intend DDLA claims to be tolled during minority, and we are not at liberty to rewrite the DDLA to include a provision the Legislature has excluded. (Norgart, supra, 21 Cal.4th at pp. 396-397.) The Legislature of course may amend the DDLA if it disagrees with our conclusion, as the dissent urges. But as the DDLA reads now, the trial court correctly concluded that the statute of limitations for Barker’s DDLA claim was not tolled prior to her attaining the age of majority.
3. Barker Waived Her Argument That Health and Safety Code Section 11714, Subdivision (b), Applies to Her Claim, and Even if Not, That Subdivision Does Not Render Her Claim Timely
Barker also argues that Health and Safety Code section 11714, subdivision (b), tolled her claim until one year after the expiration, of the three-year period within which Garza could have been criminally prosecuted for the drug offenses that underlie Barker’s DDLA claim. (See Pen. Code, *1463 §801.) Barker never raised this contention before the trial court, and we deem it waived. (Evans, supra, 134 Cal.App.4th at p. 160.) Even considering this argument on the merits, section 11714, subdivision (b) only applies when the defendant “is convicted of a criminal offense involving an illegal controlled substance or as otherwise provided by law.” (Italics added.) Nothing in the record suggests that Garza was convicted (or even prosecuted) for any offense, so Barker’s claim was not tolled on this basis.
DISPOSITION
The trial court’s order sustaining Garza’s demurrer is affirmed. Garza is entitled to costs on appeal.
Bigelow, P. J., concurred.

 We grant Barker’s unopposed request for judicial notice of the Michigan DDLA, Michigan Compiled Laws Annotated section 691.1601 et seq., as well as the legislative history of California’s DDLA. (Evid. Code, §§451, 452.) We decline to take judicial notice of an article from the Model DDLA Web site and an excerpt from an article in the Valparaiso University Law Review. The information contained in those sources is reasonably subject to dispute and Barker has not provided sufficient information for us to determine if judicial notice is proper. (Evid. Code, §§ 452, subd. (h), 453, subd. (b).)

 Fentanyl is a powerful pain medication; both fentanyl and Klonopin are available only by prescription and may only be used under medical supervision.

 We refer to Matthew by first name only for clarity; no disrespect is intended.

 The record does not reflect Barker’s exact birth date, but the parties do not dispute that Barker reached the age of majority in April 2010.

 All further statutory citations are to the Code of Civil Procedure unless otherwise indicated.

 The trial court overruled the demurrer as to other plaintiffs and plaintiffs have filed a third amended complaint. Those claims and amendments are not at issue here. The order of dismissal disposed of all claims by Barker against Garza, so it is appealable pursuant to section 581, subdivision (d).

 Barker raised a third issue in a footnote in her opening brief that her DDLA claim was preserved by equitable tolling. She did not raise this argument in the trial court, so we find it waived. (Evans v. Centerstone Development Co. (2005) 134 Cal.App.4th 151, 160-161 [35 Cal.Rptr.3d 745] (Evans).) Even excusing her waiver, we decline to consider this issue because it was presented only in a footnote in her opening brief. (Id. at p. 160.)

 Section 338, subdivision (a) imposes a three-year limitation period for “[a]n action upon a liability created by statute, other than a penalty or forfeiture.” Section 340, subdivision (a) imposes a one-year limitation period for “[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation.” To address Barker’s argument, we need not decide, as between those two provisions, which might apply to her DDLA claim. (Low v. Lan (2002) 96 Cal.App.4th 1371, 1380-1382 [118 Cal.Rptr.2d 60] [describing difference between penalties within § 340, subd. (a) and other claims within § 338, subd. (a)].) If her DDLA claim was subject to either provision, Barker’s claim was tolled by section 352 and would have been timely.

 In 1970, the Legislature enacted section 352, subdivision (b), which nullified the Supreme Court’s holding in Williams and prohibits tolling under section 352 for claims against public entities required to be presented pursuant to certain provisions of the Government Code. (Todd v. County of Los Angeles (1977) 74 Cal.App.3d 661, 665 [141 Cal.Rptr. 622].)

 Colleen L. v. Howard M. (1989) 209 Cal.App.3d 542 [257 Cal.Rptr. 263] and Jessica H. v. Allstate Ins. Co. (1984) 155 Cal.App.3d 590 [202 Cal.Rptr. 239], cited by the dissent, are distinguishable. Like Williams, Colleen L. applied minority tolling to a claim with a statute of limitations fixed by former section 340.1, a section within chapter 3. (Colleen L., supra, at p. 545 & fn. 6.) Jessica H. applied section 352(a) to the statute of limitations for a claim based on an insurance contract governed by Hawaii law. The court noted, absent contrary proof, the plaintiff’s claim was subject to the four-year limitations period in section 337, which fell within chapter 3, so it would be subject to section 352(a) tolling. (Jessica H, supra, at p. 592.) The court then rejected the insurer’s argument that minority tolling did not apply to toll a two-year statute of limitations in Hawaii’s no-fault law, citing Williams for California’s public policy of minority tolling. (Jessica H., at p. 595.) The court appeared to base its conclusion largely on the fact that the minor’s claim was for contractual benefits, which would fall within *1459 chapter 3, although it noted under both Hawaii and California law the limitations period in the no-fault statute would be tolled during minority.

 The Senate committee’s analysis explained: “[T]he bill would also provide that, for defendants, the statute does not expire until one year after a person is convicted of drug trafficking. This latter provision creates the possibility of a very long statute of limitations. Suppose, for example, X sells a bag of PCP on January 1, 1997 to the user who proceeds to assault and batter the victim in a PCP-induced rage. Under Penal Code Section 800, the People have 3 years to commence a criminal prosecution for the drug trafficking offense. A felony criminal prosecution under the ‘Three Strikes’ law could easily be held over 12 to 18 months before the case is tried. In this scenario, where the seller is convicted 4 and 1/2 years after the sale, the tolling provision creates a 5 and 1/2 year statute of limitations to bring the action instead of the ‘normal’ one year. Thus, the special tolling provision may make it very difficult for a dealer to contest the case.” (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t-u.)

 Barker suggests in passing that the accrual provision of Health and Safety Code section 11714 indicates that the Legislature intended the limitations period to be tolled during her minority when she did not have independent capacity to sue. Yet, the accrual provision does not address legal capacity to sue; it simply codifies the familiar discovery rule for accrual. (See Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] (Norgart).)

 The dissent also relies on legislative changes to the DDLA as it evolved in the lawmaking process to eliminate the use of the word “tolled” in Health and Safety Code section 11714, subdivision (b) when the bill was amended to also eliminate tolling while a plaintiff is incapacitated. (Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996.) Still, the Senate committee analysis continued to refer to the provision as “tolling” the statute of limitations even after the amendments, which weakens any inference the change was substantive. (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t-v.) Notably, the original bill also included the phrase “individual potential plaintiff” as part of the tolling provision related to a plaintiff’s incapacity, suggesting the parallel phrase “individual potential defendant” in subdivision (b) means simply an individual who has not yet been named in the lawsuit, not a market participant defendant who has not yet suffered the required predicate conviction to be liable, as the dissent contends.