Filed 8/22/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ABIGAIL BARKER, | B237916 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC 045404) |
| v. | |
| CARI EILEEN GARZA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph F. De Vanon, Judge. Affirmed.

Law Office of Marilyn M. Smith, Marilyn M. Smith; Law Office of Lisa Fisher and Lisa Fisher for Plaintiff and Appellant.

Carroll, Kelly, Trotter, Franzen & McKenna, Mark V. Franzen, Jennifer L. Sturges and Christy Lee Thomasson for Defendant and Respondent.

\* \* \* \* \* \*

Abigail Barker appeals the dismissal of her claim against Cari Eileen Garza pursuant to the Drug Dealer Liability Act (DDLA), Health and Safety Code section 11700 et seq., which was based upon the death of her brother due to an overdose of controlled substances allegedly supplied by Garza, a registered psychiatric nurse. The trial court sustained Garza's demurrer to Barker's DDLA claim in her second amended complaint (SAC) without leave to amend on the ground that it was untimely pursuant to the one-year statute of limitations in the DDLA. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Because Barker appeals from the sustaining of Garza's demurrer, we accept as true the facts alleged in the SAC. (*Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1197.) Barker's brother, Matthew Steven Barker, died on June 10, 2008, from an overdose of either the drug fentanyl, or a combination of the drugs fentanyl and Klonopin.[2] At the time of Matthew's[3] death, Barker was a minor; she reached the age of majority in April 2010.[4]

Prior to his death, Matthew suffered from mental illness. At various times he was a patient in the psychiatric unit at Aurora Las Encinas Hospital in Pasadena, California, and between December 2005 and March 2007, Garza was one of the nurses responsible for Matthew's care. Both while Matthew was in the hospital and after he was discharged,

---

[1]    We grant Barker's unopposed request for judicial notice of the Michigan DDLA, Michigan Compiled Laws Annotated section 691.1601 et seq., as well as the legislative history of California's DDLA. (Evid. Code, §§ 451, 452.) We decline to take judicial notice of an article from the Model DDLA website and an excerpt from an article in the Valparaiso University Law Review. The information contained in those sources is reasonably subject to dispute and Barker has not provided sufficient information for us to determine if judicial notice is proper. (Evid. Code, §§ 452, subd. (h), 453, subd. (b).)

[2]    Fentanyl is a powerful pain medication; both fentanyl and Klonopin are available only by prescription and may only be used under medical supervision.

[3]    We refer to Matthew by first name only for clarity; no disrespect is intended.

[4]    The record does not reflect Barker's exact birth date, but the parties do not dispute that Barker reached the age of majority in April 2010.

2

Garza maintained an inappropriate personal relationship with him, and Matthew came to rely on her for assistance when his illness prevented him from properly taking care of himself or exercising proper judgment.

Garza illegally sold or distributed certain drugs and medications to individuals who did not have valid prescriptions, including Matthew. Among them were fentanyl and Klonopin, which she provided to Matthew during an acute relapse of his bipolar disease and a severe period of mania, even though she knew that fentanyl did not treat bipolar disease or other mental illnesses and that Klonopin was not to be used by individuals with a history of addiction. She also knew that improperly administered fentanyl could be fatal, as could a combination of the two drugs. As a result of taking those medications, Matthew died.

Exactly two years after Matthew's death on June 10, 2010, Barker, Matthew's estate, and Matthew's mother filed a civil complaint against Garza and another defendant, alleging claims for statutory elder abuse, product liability, fraudulent concealment, and wrongful death. On February 9, 2011, the plaintiffs filed a first amended complaint, asserting for the first time claims against Garza pursuant to the DDLA. The plaintiffs subsequently filed the SAC on August 11, 2011, which maintained their DDLA claims against Garza.

Garza demurred to the SAC, arguing, inter alia, that the plaintiffs' DDLA claims were barred by the one-year statute of limitations in Health and Safety Code section 11714, subdivision (a). As relevant here, Barker argued that her DDLA claim was timely because the statute of limitations was tolled during the period she was a minor pursuant to Code of Civil Procedure section 352, subdivision (a) (section 352(a)).[5] The trial court sustained the demurrer without leave to amend, rejecting Barker's tolling argument and finding her DDLA claim untimely. The trial court also sustained the demurrer as to

---

**5** All further statutory citations are to the Code of Civil Procedure unless otherwise indicated.

Barker's other claims and an order of dismissal followed. Barker has appealed only the dismissal of her DDLA claim.[6]

## DISCUSSION

On appeal, Barker does not contend that her DDLA claim accrued any later than the date of Matthew's death, June 10, 2008. Absent tolling, the one-year statute of limitations in Health and Safety Code section 11714, subdivision (a) expired on June 10, 2009, and Barker's assertion of her DDLA claim on February 9, 2011, was untimely. We thus address only two narrow issues: whether the trial court correctly concluded that the limitations period in Health and Safety Code section 11714, subdivision (a) was not tolled until Barker reached the age of majority; and alternatively, whether section 11714, subdivision (b) tolled Barker's claim until the expiration of the time in which Garza could have been prosecuted for controlled substance offenses. We conclude that the trial court properly refused to apply minority tolling to Barker's DDLA claim. Further, we find that Barker waived her argument under section 11714, subdivision (b). Even if not, we hold that section 11714, subdivision (b) does not apply to her claim because Garza was never convicted of a criminal offense involving an illegal controlled substance.[7]

### 1. *Standard of Review*

We review de novo the sustaining of a demurrer. (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 75.) "'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions

---

**6**    The trial court overruled the demurrer as to other plaintiffs and the plaintiffs have filed a third amended complaint. Those claims and amendments are not at issue here. The order of dismissal disposed of all claims by Barker against Garza, so it is appealable pursuant to section 581, subdivision (d).

**7**    Barker raised a third issue in a footnote in her opening brief that her DDLA claim was preserved by equitable tolling. She did not raise this argument in the trial court, so we find it waived. (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160-161 (*Evans*).) Even excusing her waiver, we decline to consider this issue because it was presented only in a footnote in her opening brief. (*Id.* at p. 160.)

or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]'" (*Ibid.*) "When a complaint shows on its face that it is barred by a statute of limitations, a general demurrer may be sustained and a judgment of dismissal may be entered." (*McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 802 (*McGee*); see also *Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036, 1044.)

## 2. *The Statute of Limitations for DDLA Claims Is Not Tolled During Minority*

The applicability of minority tolling under the DDLA is one of statutory interpretation, and we are guided by well-established principles. "[O]ur goal is 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.'" (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1087 (*Coachella Valley*).) First, we must look to the words of the statute, which generally provide the most reliable indicator of legislative intent. (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880 (*Vafi*).) If the statutory language is unambiguous, then we presume the Legislature meant what it said and our inquiry ends. (*Ibid.*) We give words in a statute their plain and common sense meaning, and we avoid a construction that would produce absurd results, which we presume the Legislature did not intend. (*Ibid.*) We also "do not construe statutes in isolation; rather, we construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided." (*Coachella Valley, supra*, at p. 1089.)

## A. Statutory Framework

### 1. *The DDLA*

Enacted in 1996, the DDLA created a "civil remedy for damages to persons in a community injured as a result of the use of an illegal controlled substance." (Health & Saf. Code, § 11701.) The statute was intended to serve several purposes: to enable

5

plaintiffs "to recover damages from those persons in the community who have joined the marketing of illegal controlled substances"; "to shift, to the extent possible, the cost of the damage caused by the existence of the market for illegal controlled substances"; "to establish the prospect of substantial monetary loss as a deterrent to those who have not yet entered into the distribution market for illegal controlled substances"; and "to establish an incentive for users of illegal controlled substances to identify and seek payment for their own treatment from those dealers who have sold illegal controlled substances to the user in the past." (*Ibid.*; see also Health & Saf. Code, § 11702.) The statute created a cause of action against a "person who knowingly participates in the marketing of illegal controlled substances" (§ 11704), and it confers standing on a broad array of plaintiffs, including "[a] parent, legal guardian, child, spouse, or sibling of the individual controlled substance user," "[a]n individual who was exposed to an illegal controlled substance in utero," and employers and other entities (§ 11705), as well as individual users under certain conditions (§ 11706).

As broad as the potential class of plaintiffs is under the DDLA, the window of time within which they can sue is narrow. The DDLA imposes a one-year statute of limitations on all claims following accrual and provides for tolling in only one circumstance: "(a) Except as otherwise provided in this section, a claim under this division shall not be brought more than one year after the defendant furnishes the specified illegal controlled substance. A cause of action accrues under this division when a person who may recover has reason to know of the harm from use of an illegal controlled substance that is the basis for the cause of action and has reason to know that the use of an illegal controlled substance is the cause of the harm. [¶] (b) For a defendant, the statute of limitations under this section does not expire until one year after the individual potential defendant is convicted of a criminal offense involving an illegal controlled substance or as otherwise provided by law." (Health & Saf. Code, § 11714.)

2. *Section 352(a)*

Title 2 of part 2 of the Code of Civil Procedure prescribes the limitations periods during which "[c]ivil actions, without exception," must be commenced after they accrue,

6

"unless where, in special cases, a different limitation is prescribed by statute." (§ 312.) Chapter 3 of that title and part (chapter 3) sets forth the limitations periods for actions other than for the recovery of real property. (§§ 335-349.4.) Section 352 appears in chapter 4 of that title and part, which sets forth certain general provisions applicable to limitations periods, including grounds for tolling. (See, e.g., §§ 351-356.) Section 352(a) states that, "[i]f a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) is, at the time the cause of action accrued either under the age of majority or insane, the time of the disability is not part of the time limited for the commencement of the action."

## B. Minority Tolling Under the DDLA

Statutes of limitations reflect a legislative policy to "promote justice and prevent the assertion of stale claims after the lapse of long periods of time." (*McGee, supra*, 97 Cal.App.3d at p. 804.) "'"The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."'" (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 488.)

Section 352(a) embodies an exception to this policy by "effectuat[ing] a deep and long[-]recognized principle of the common law and of this state: children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations." (*Williams v. Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 602 (*Williams*).) However, section 352(a) is not absolute; it is limited to actions "mentioned" within chapter 3 of the Code of Civil Procedure. (*Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 97 (*Blankenship*) ["By its own terms, . . . section 352 applies only to civil actions initiated in a court of law mentioned in chapter 3 . . . of the Code of Civil Procedure, commencing with . . . section 335."].)

Although the DDLA appears in the Health and Safety Code, Barker contends that her DDLA claim is "mentioned" in chapter 3 of the Code of Civil Procedure, and therefore subject to section 352(a), because it is an action upon a statute as provided in

7

section 338, subdivision (a) or section 340, subdivision (a).[8] We disagree. When multiple statutes of limitations may apply to a claim, "a specific statute of limitations takes precedence over a general one, even though the latter '"would be broad enough to include the subject to which the more particular provision relates." [Citation.]'" (*Vafi, supra*, 193 Cal.App.4th at p. 880; see also *David M. v. Beverly Hospital* (2005) 131 Cal.App.4th 1272, 1279 [applying statute of limitations and tolling provisions in § 340.5 for tort claims against health care providers over more general provisions in §§ 338 and 352]; *Estate of Mason* (1990) 224 Cal.App.3d 634, 638 [applying statute of limitations in Prob. Code over more general statute of limitations in Code Civ. Proc., § 337 for actions based on a written instruments].) The DDLA contains its own limitations period, so that more specific provision applies to Barker's DDLA claim over the more general provisions in chapter 3 of the Code of Civil Procedure. Because Barker's claim does not fall within chapter 3, section 352(a) does not apply to toll her claim. (See § 312.)

The language, structure, and purpose of the DDLA also convince us that the Legislature did not intend to toll DDLA claims for minors. In Health and Safety Code section 11714, subdivision (a), the Legislature provided that, "[e]xcept as otherwise provided *in this section*, a claim under this division *shall not be brought* more than one year after the defendant furnishes the specified illegal controlled substance" once the claim has accrued. (Italics added.) The phrase "in this section" refers to Health and Safety Code section 11714, subdivision (b), which states that the limitations period does not expire until one year after an "individual potential defendant is convicted of a

---

**8**     Section 338, subdivision (a) imposes a three-year limitation period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Section 340, subdivision (a) imposes a one-year limitation period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." To address Barker's argument, we need not decide, as between those two provisions, which might apply to her DDLA claim. (*Low v. Lan* (2002) 96 Cal.App.4th 1371, 1380-1382 [describing difference between penalties within § 340, subd. (a) and other claims within § 338, subd. (a)].) If her DDLA claim was subject to either provision, Barker's claim was tolled by section 352 and would have been timely.

8

criminal offense involving an illegal controlled substance or as otherwise provided by law."

"'[I]f exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.'" (*Vafi, supra*, 193 Cal.App.4th at p. 881; see also *Blankenship, supra*, 186 Cal.App.4th at p. 94 ["By long-standing rule of statutory construction, the Legislature's omission of a term in a list of terms indicates the Legislature did not intend to include the omitted term, and we cannot add the term to the statute by judicial fiat."].) By delineating one ground for tolling and providing that all other claims "shall not be brought" more than one year after accrual, the Legislature intended to limit tolling to that one circumstance and exclude all others, including tolling based on a plaintiff's minority.

Both Barker and the dissent rely on *Williams* to avoid this conclusion. In that case, a minor sued a public entity for negligence and timely filed a claim with the entity, but failed to timely file his lawsuit as required by Code of Civil Procedure section 342, which required him to commence his lawsuit against a public entity within the time period set forth in Government Code section 945.6. (*Williams, supra*, 68 Cal.2d at p. 601.) The public entity argued that the plaintiff's claim was untimely and not tolled by Code of Civil Procedure section 352, but the Supreme Court disagreed. First, the court held that section 352 applied because the plaintiff's claim was expressly "mentioned" in chapter 3 of the Code of Civil Procedure as a claim against a public entity. (*Williams*, at pp. 601-602.) As a result, the plaintiff's claim was "protected until majority, no matter what statutory limitations apply to litigants other than minors." (*Id.* at p. 601.) Second, the court rejected the argument that the Legislature's inclusion of tolling in Government Code section 945.6 for felons implicitly negated application of tolling in Code of Civil Procedure section 352. (*Williams*, at p. 603.) The court reasoned that the maxim of *expressio unius est exclusio alterius* for statutory construction did not apply because Code of Civil Procedure section 352 unambiguously provided for tolling of any claim mentioned in chapter 3. (*Williams*, at p. 603.) And third, the legislative history of

9

Government Code section 945.6 did not suggest that the Legislature intended to preclude tolling based on minority for claims against public entities. (*Williams*, at p. 607.)[9]

Williams is distinguishable. In *Williams*, the statute of limitations for the plaintiff's claim was fixed by Code of Civil Procedure section 342 (which expressly incorporated the limitations period in Government Code section 945.6), which falls within chapter 3, so section 352(a) applied by its plain terms. (*Williams, supra*, 68 Cal.2d at p. 602 ["Indubitably, chapter three does 'mention' this kind of action; it specifically refers to an action against a public entity for which a claim must be presented; *it specifically prescribes the limitation applicable to such an action*." (Italics added.)].) As a result, the high court was unwilling to find minority tolling implicitly abrogated by enactment of tolling for felons. In contrast, in the DDLA, the Legislature exercised its authority under Code of Civil Procedure section 312 to remove claims from the more general limitations periods in chapter 3 and fix a statute of limitations specific to DDLA claims, and we have found no authority to suggest a claim not subject to any limitations period in chapter 3 can nevertheless still be "mentioned" in chapter 3 to trigger section 352(a) minority tolling. Our inquiry is thus whether the Legislature intended section 352(a) to apply, notwithstanding a claim under the DDLA is not subject to a limitations period fixed by chapter 3.[10]

---

[9]    In 1970, the Legislature enacted section 352, subdivision (b), which nullified the Supreme Court's holding in *Williams* and prohibits tolling under section 352 for claims against public entities required to be presented pursuant to certain provisions of the Government Code. (*Todd v. County of Los Angeles* (1977) 74 Cal.App.3d 661, 665.)

[10]    *Colleen L. v. Howard M.* (1989) 209 Cal.App.3d 542 and *Jessica H. v. Allstate Ins. Co.* (1984) 155 Cal.App.3d 590, cited by the dissent, are distinguishable. Like *Williams*, *Colleen L.* applied minority tolling to a claim with a statute of limitations fixed by former section 340.1, a section within chapter 3. (*Colleen L., supra*, at p. 545 & fn. 6.) *Jessica H.* applied section 352(a) to the statute of limitations for a claim based on an insurance contract governed by Hawaii law. The court noted, absent contrary proof, the plaintiff's claim was subject to the four-year limitations period in section 337, which fell within chapter 3, so it would be subject to section 352(a) tolling. (*Jessica H., supra*, at p. 592.) The court then rejected the insurer's argument that minority tolling did not apply to toll a two-year statute of limitations in Hawaii's no-fault law, citing *Williams* for

Unlike the implicit negation in *Williams*, the language in Health and Safety Code section 11714, subdivision (a) requiring that DDLA claims "shall not be brought more than one year" after accrual except as set forth in subdivision (b) expresses a clear legislative judgment that the one-year statute of limitations applies to all DDLA claims, except in one circumstance. (See *Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 158-159.) In *Bledstein*, the court concluded that section 352(a) did not directly apply to toll the limitations period in Code of Civil Procedure section 340.6 for legal malpractice claims, which would "in no event" exceed four years unless the period is tolled for the reasons delineated, although the court ultimately concluded that tolling based on a "legal or physical disability" in section 340.6 was broad enough to encompass the grounds set forth in section 352(a). (*Bledstein*, at pp. 156-162.) The court distinguished *Williams* because Code of Civil Procedure section 340.6 contained a tolling provision for legal disabilities and because the statute in *Williams* did not contain language similar to the "in no event" phrase in section 340.6 limiting tolling to the grounds specified. (*Bledstein*, at p. 159; see also *Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 569-570 [following *Bledstein*]; cf. *Farb v. Superior Court* (2009) 174 Cal.App.4th 678, 683 [finding that language that limitations period in Code Civ. Proc., § 366.2 "shall not be tolled or extended for any reason except" in enumerated circumstances excluded minority tolling under § 352].) Similar to the "in no event" language in *Bledstein* and unlike in *Williams*, the limiting language in the DDLA demonstrates an intent to create one express tolling exception and exclude others.

Two additional features of the DDLA distinguish it from *Williams* and support our conclusion that minority tolling does not apply. First, the Legislature conferred standing on certain minors to sue for DDLA violations, such as infants who were exposed to drugs

---

California's public policy of minority tolling. (*Jessica H.*, at p. 595.) The court appeared to base its conclusion largely on the fact that the minor's claim was for contractual benefits, which would fall within chapter 3, although it noted under both Hawaii and California law the limitations period in the no-fault statute would be tolled during minority.

11

in utero and other children of drug users.  (Health & Saf. Code, § 11705; see also § 11701 [identifying one class of plaintiffs as "infants injured as a result of exposure to controlled substances in utero ('drug babies')"].)  Having enabled minors to sue under the DDLA while also imposing a strict one-year limitation period on DDLA claims, the Legislature would have included minority tolling if it had intended to toll the limitations period for minors.

Second, when enacting Health and Safety Code section 11714, subdivision (b), the Legislature carefully considered the interests implicated by tolling the time leading to a defendant's conviction, which might delay a claim for five or more years and "make it very difficult for a dealer to contest the case."  (Sen. Com. on Criminal Procedure, Analysis of Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t, u.)[11]  Depending on the age of the minor when his or her cause of action accrues, a minor's DDLA claim could be tolled up to 18 years before the limitations period begins to run.  (Fam. Code, § 6500 [defining minors as under the age of 18].)  We think the Legislature would not have expressly addressed the policy implications for tolling for criminal convictions while only implicitly accepting minority tolling, which even more directly implicates the policy against stale claims.[12]

---

[11]     The Senate committee's analysis explained:  "[T]he bill would also provide that, for defendants, the statute does not expire until one year after a person is convicted of drug trafficking.  This latter provision creates the possibility of a very long statute of limitations.  Suppose, for example, X sells a bag of PCP on January 1, 1997 to the user who proceeds to assault and batter the victim in a PCP-induced rage.  Under Penal Code Section 800, the People have 3 years to commence a criminal prosecution for the drug trafficking offense.  A felony criminal prosecution under the 'Three Strikes' law could easily be held over 12 to 18 months before the case is tried.  In this scenario, where the seller is convicted 4 and 1/2 years after the sale, the tolling provision creates a 5 and 1/2 year statute of limitations to bring the action instead of the 'normal' one year.  Thus, the special tolling provision may make it very difficult for a dealer to contest the case."  (Sen. Com. on Criminal Procedure, Analysis of Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t, u.)

[12]     Barker suggests in passing that the accrual provision of Health and Safety Code section 11714 indicates that the Legislature intended the limitations period to be tolled

12

The dissent argues Health and Safety Code section 11714, subdivision (b) is not a "tolling" provision at all, but instead "creates . . . an enlarged limitations period applicable to only certain defendants," and, as a result, cannot be used to infer legislative intent to exclude all other grounds for tolling. (Dis. opn., *post*, p. 9.) That interpretation does not comport with the language of the statute or its legislative history.

As the dissent correctly explains, under Health and Safety Code section 11704, subdivision (a), persons liable under the DDLA are those who "knowingly participate[] in the marketing of illegal controlled substances." "'Participate in the marketing of illegal controlled substances'" is defined as "to transport, import into this state, sell, possess with intent to sell, furnish, administer, or give away, or offer to transport, import into this state, sell, furnish, administer, or give away a specified controlled substance." (Health & Saf. Code, § 11703, subd. (g).) In turn, a person entitled to bring an action under the DDLA may seek damages from "(1) [a] person who sold, administered, or furnished an illegal controlled substance to the individual user of the illegal controlled substance," or "(2) [a] person who knowingly participated in the marketing of illegal controlled substances," if certain requirements are satisfied, including that "[t]he defendant's participation in the marketing of illegal controlled substances was connected with the same type of specified illegal controlled substance used by the individual user of an illegal controlled substance, and the defendant has been convicted of an offense for that type of specified illegal controlled substance." (Health & Saf. Code, § 11705, subd. (b)(1), (2).) Subdivision (c) of section 11705 specifies the phrase "knowingly participated in the marketing of illegal controlled substances" used in subdivision (b) means "a conviction for transporting, importing into this state, selling, possessing with intent to sell, furnishing, administering, or giving away, or offering to transport, import into this state, sell, furnish, administer, or give away a specified illegal controlled

---

during her minority when she did not have independent capacity to sue. Yet, the accrual provision does not address legal capacity to sue; it simply codifies the familiar discovery rule for accrual. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*).)

13

substance or a quantity of marijuana specified in subdivision (e), (f), (g), or (h) of Section 11703, which are separate in time."

In the dissent's view, these provisions "distinguish[] two groups of potential civil defendants:  (1)  Those who sell or furnish drugs to an individual user; and (2)  those who participate in other marketing activities by requiring that the latter have been convicted of a drug offense arising from their participation."  (Dis. opn., post, p. 10.)  That is correct, but we disagree that distinction carries over to Health and Safety Code section 11714, with subdivision (a) only applying to the former category of individuals, and subdivision (b) only applying to the latter.

First, Health and Safety Code section 11714, subdivision (a) is not limited to only defendants who directly sell or furnish illegal controlled substances to individual users.  It merely provides a claim may not be brought more than one year after the defendant "furnishes" the drugs.  As noted above, market participant defendants are liable if they "knowingly participated in the marketing of illegal controlled substances" (Health & Saf. Code, § 11705, subd. (b)(2)) and the phrase "participate[] in the marketing of illegal controlled substances" includes selling and furnishing drugs (Health & Saf. Code, § 11703, subd. (g)).  Thus, both categories of defendants can "furnish" controlled substances to trigger the statute of limitations in section 11714, subdivision (a).

Second, the language of Health and Safety Code section 11714, subdivision (b) is not limited to market participant defendants who must have suffered (or will suffer) *separate* predicate convictions to trigger their liability under Health and Safety Code section 11705, subdivision (b)(2).  To the contrary, the language is broad, applying to "a defendant" and covering any "criminal offense involving an illegal controlled substance" (§ 11714, subd. (b)), which could very well include convictions for the direct sale or furnishing of a controlled substance to a user, who then injures a victim suing under the DDLA.  An "individual potential defendant" in subdivision (b) likewise could be any defendant liable under the DDLA, whether as a market participant or a direct seller, but who has not yet been named in the lawsuit.  And even if subdivision (b) is susceptible to the dissent's interpretation, at most that renders the statute ambiguous, and the legislative

14

history makes clear it was not intended to be limited to market participant defendants. The hypothetical used in the senate committee analysis as an example of the operation of section 11714, subdivision (b) involved a prosecution and conviction for the sale of a controlled substance to the user, who then injured the victim, i.e., a direct seller defendant. (See, *post*, fn. 11.)[13] Thus, section 11714, subdivision (b) is no more than a tolling provision applying to all defendants under the DDLA. Having included it in the statute alongside a directive that a one-year limitations period applies "except as otherwise provided in" subdivision (b), the Legislature excluded minority tolling under section 352(a).

We recognize the strong public policy in protecting minors from the sometimes harsh application of statutes of limitations. (*Williams, supra*, 68 Cal.2d at p. 602.) We think it is clear, though, that the Legislature did not intend DDLA claims to be tolled during minority, and we are not at liberty to rewrite the DDLA to include a provision the Legislature has excluded. (*Norgart, supra*, 21 Cal.4th at pp. 396-397.) The Legislature of course may amend the DDLA if it disagrees with our conclusion, as the dissent urges. But, as the DDLA reads now, the trial court correctly concluded that the statute of limitations for Barker's DDLA claim was not tolled prior to her attaining the age of majority.

---

[13]    The dissent also relies on legislative changes to the DDLA as it evolved in the lawmaking process to eliminate the use of the word "tolled" in Health and Safety Code section 11714, subdivision (b) when the bill was amended to also eliminate tolling while a plaintiff is incapacitated. (Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996.) Still, the senate committee analysis continued to refer to the provision as "tolling" the statute of limitations even after the amendments, which weakens any inference the change was substantive. (Sen. Com. on Criminal Procedure, Analysis of Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t, u.) Notably, the original bill also included the phrase "individual potential plaintiff" as part of the tolling provision related to a plaintiff's incapacity, suggesting the parallel phrase "individual potential defendant" in subdivision (b) means simply an individual who has not yet been named in the lawsuit, not a market participant defendant who has not yet suffered the required predicate conviction to be liable, as the dissent contends.

15

***3. Barker Waived Her Argument That Health and Safety Code Section 11714, Subdivision (b), Applies to Her Claim, and Even If Not, That Subdivision Does Not Render Her Claim Timely***

Barker also argues that Health and Safety Code section 11714, subdivision (b), tolled her claim until one year after the expiration of the three-year period within which Garza could have been criminally prosecuted for the drug offenses that underlie Barker's DDLA claim. (See Pen. Code, § 801.) Barker never raised this contention before the trial court, and we deem it waived. (*Evans, supra*, 134 Cal.App.4th at p. 160.) Even considering this argument on the merits, section 11714, subdivision (b) only applies when the defendant "*is convicted* of a criminal offense involving an illegal controlled substance or as otherwise provided by law." (Italics added.) Nothing in the record suggests that Garza was convicted (or even prosecuted) for any offense, so Barker's claim was not tolled on this basis.

## DISPOSITION

The trial court's order sustaining Garza's demurrer is affirmed. Garza is entitled to costs on appeal.

FLIER, J.

I CONCUR:

BIGELOW, P. J.

16

RUBIN, J. – Dissenting

I respectfully dissent.

The statute of limitations applicable to a minor's causes of action is tolled until his 18th birthday.  (Code Civ. Proc., § 352, subd. (a).)[1]  This statute "effectuate[s] a deep and long recognized principle of the common law and of this state:  children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations.  This principle became part of California statutory law as long ago as 1863 . . . ."  (*Williams v. Los Angeles Metro. Transit Auth.* (1968) 68 Cal.2d 599, 602-603 (*Williams*).)  This special safeguard is required because minors do not have the comprehension or experience of an adult and because they can sue only through a guardian.  (*West Shield Investigations and Sec. Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 947.)

The Drug Dealer Liability Act (Health & Saf. Code, § 11700 et seq., (the Act)) provides a civil remedy for damages to persons injured by the use of illegal controlled substances.  The Act is designed to permit recovery of damages from those who take part in furnishing or marketing illegal drugs.  (Health & Saf. Code, § 11701.)  In enacting this law, the Legislature found that the civil justice system could also serve as a weapon against the marketing of illegal drugs, as well as compensate those damaged by such conduct.  (Health & Saf. Code, § 11702, subd. (a).)

The Act grants standing to a wide variety of parties harmed by an individual's drug use, including children of the user and those exposed to the drugs as unborn

---

[1]      All further undesignated section references are to the Code of Civil Procedure. Section 352 also tolls the statute of limitations during the time a person is insane.

children.  (Health & Saf. Code, § 11705, subd (a)(1), (2).)[2]  The majority would deprive these plaintiffs of the special protections afforded by section 352, and thereby hamstring their ability to vindicate their rights under the Act, for two purported reasons: (1)  because claims brought under the Act are not specifically mentioned in sections 335 through 349.4, which comprise Chapter 3 of Part 2 of the Code of Civil Procedure, as required under section 352, subdivision (a); and (2)  because the Legislature supplied a tolling provision for defendants that ran until they were convicted of a drug-related offense, but did not expressly include tolling for minors.  In my opinion, the majority's first point misapprehends the issue before us.  The second misconstrues the Act's language and legislative history.

Section 352 applies to actions "mentioned" in sections 335 through 349.4.  (§ 352, subd. (a).)  Among these are "action[s] upon a liability created by statute . . . ."  (§ 338, subd. (a)), which I believe applies to the Drug Dealer Liability Act.  The majority effectively holds that where such liability exists and the statutory scheme includes its own limitations period, statutory tolling for minors does not apply unless the Legislature expressly says so.  Although the Act is designed to provide a remedy for children who have been harmed by drug dealing activity, the majority's interpretation will likely slam shut the courthouse doors to them in virtually every case.  As set forth below, I believe the majority is wrong and that its holding has profound implications far beyond this case that call for clarification by the Legislature and our Supreme Court.

1.      *The Act Is "Mentioned" In Section 338 As A Liability Created By Statute*

As just noted the tolling provision of section 352 applies to any action "mentioned" in sections 335 through 349.4.  (§ 352, subd. (a).)  Barker makes two separate arguments on this issue.  In her opening appellate brief, she points to

---

[2]      The Act also grants standing to siblings such as Barker.  Because she was a minor when Garza allegedly furnished her late brother with drugs, I analyze the issue through the prism of the rights of minors.

2

section 338, subdivision (a), which provides a three-year limitations period for actions based on a liability created by statute, and to section 340, subdivision (a), which provides a one-year limitations period for actions upon a statute for a penalty or forfeiture. These two provisions supply the required nexus with section 352, Barker contends, because the Act creates a statutory liability. In her appellate reply brief, Barker also contends that the three-year limitation period of section 338, subdivision (a) applies independently.

The majority does not differentiate between these separate issues. Instead, it recites the settled rule that a specific limitations period governs over a more general one, and holds that the Act's internal limitations period takes it outside the scope of section 338. As a result, the majority concludes, liability under the Act is not "mentioned" in either section 338 or section 340, eliminating the need to determine which of those two limitations period applies.

It is therefore unclear whether the majority is addressing only Barker's second contention, or has simply conflated it with her first. In either case, the issue is not whether the three-year period of section 338 applies *instead of* the Act's one-year time frame. It does not. Instead, the issue is whether, for purposes of section 352, liability under the Act is *mentioned in* section 338, subdivision (a) because it is a liability created by statute.[3]

---

[3] The Act extends liability to market participants with an indirect relationship to an individual drug user (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1754 (1995-1996 Reg. Sess.), for hearing on July 10, 1996), extends standing to parties with an indirect relationship to the individual drug user (Health & Saf. Code, § 11705, subd. (a)(3),(4)), creates a presumption that market participants are liable in certain prescribed percentages depending on the amount of drugs involved (Health & Saf. Code, § 11708), estops defendants with certain drug offense convictions from contesting that they participated in drug marketing activities (Health & Saf. Code, § 11712, subd. (b)(1)), and allows for ex parte prejudgment attachment of a defendant's assets. (Health & Saf. Code, § 11713, subd. (a).) As a result, liability under the Act is not coterminous with common law claims and is created by statute. (*Valdez v. Himmelfarb* (2006) 144 Cal.App.4th 1261, 1269-1270; *Liberty Transport, Inc. v. Harry W. Gorst Co.* (1991) 229 Cal.App.3d 417, 431-434, disapproved on other grounds in *Adams v. Murakami* (1991) 54 Cal.3d 105, 115.)

Although the majority does not articulate it this way, it effectively holds that liability under the Act is not created by statute under section 338, subdivision (a) because the Act contains its own internal limitations period.  Implicit in this are the following: (1)  when liability is created by a statutory scheme that *does not* provide its own limitations period, it falls within section 338 and tolling under section 352 applies unless it is expressly excluded; and (2)  when liability is created by a statutory scheme that *does* include such an internal limitations period, then section 352 tolling does not apply unless the Legislature expressly includes it.

If so, then section 352 impliedly states that actions by minors are tolled until their 18th birthday if they bring an action based upon a liability created by statute, unless the statutory scheme includes an internal limitations period and does not expressly provide that section 352 tolling applies.  The majority cites no authority that would permit adding such wording to section 352, and as far as I can tell, none exists.  Instead, the most relevant decisional authority holds to the contrary.

Our Supreme Court in *Williams* held that section 352 applied to Government Code section 945.6's six-month limitations period for causes of action against government entities because section 342, which states that actions against public entities must be brought within the time allowed under Government Code section 945.6, mentioned such actions.  "Hence, as to any cause of action mentioned or covered, in that chapter, the minor's cause [of action] is protected until majority, *no matter what statutory limitations apply to litigants other than minors.*"  (*Williams, supra,* 68 Cal.2d at p. 601, italics added.)

The *Williams* court rejected the transit authority's contention that because Government Code section 945.6, subdivision (b) permitted tolling for felons but did not mention tolling for minors, the Legislature must have inferentially repealed the tolling provision for children.  First, doing so would reverse the strong public policy in favor of tolling for minors.  Second, when the Legislature enacted section 342 in 1963 as part of the general legislation relating to claims and actions against public entities, it "concurrently and clearly 'mention[ed]' actions against public entities and preserv[ed] the

4

exemption of minors from the running of the statute of limitations." (*Williams, supra,* 68 Cal.2d at pp. 603-604.)

The majority correctly points out that the Legislature amended section 352 in 1970 by adding subdivision (b), which states that section 352 does not apply to actions against public entities subject to a statutory claims presentation requirement. Although this amendment nullified *Williams's* specific holding insofar as actions against public entities are concerned, the underlying legal principle – that minors' tolling applies even if not mentioned in a statute of limitations – remains alive and well in other contexts and has been applied in appellate decisions after the 1970 amendment.

The court in *Jessica H. v. Allstate Insurance Co.* (1984) 155 Cal.App.3d 590 (*Jessica H.*) applied *Williams* in an action that arose from the death of a Hawaii resident in a California automobile accident. The decedent's auto insurance policy provided $15,000 in no-fault benefits coverage to his children if he were killed in an auto collision. The insurance company denied his daughter's timely demand for those benefits, and she sued the insurer in California more than four years after the accident occurred. The trial court sustained without leave to amend the defendant's demurrer on the ground that the action was time barred by a Hawaii statute that imposed a two-year limitations period on claims arising from no-fault benefits coverage.

The *Jessica H.* court pointed out that Hawaii had a general tolling provision similar to section 352, meaning there were no relevant differences between California and Hawaii law that required a conflict of laws analysis. (*Jessica H., supra,* 155 Cal.App.3d at p. 593.) Citing language from *Williams* concerning the strong public policy in favor of protecting minor's rights, the *Jessica H.* court reversed, holding that the two-year limitations period was tolled while the daughter was a minor even though the Hawaii two-year statute of limitations said nothing about tolling. (*Id.* at pp. 594-596.) Under both Hawaii and California law, "general tolling statutes apply to special time limitations for filing suit contained in specific statutes in the absence of an expression of legislative intent to the contrary." (*Id.* at pp. 592, 595-596; accord 3 Witkin Cal. Procedure (5th ed. 2008) Actions, § 696, p. 916.)

5

The same rationale was applied to section 340.1, the statute of limitations applicable to a minor's claims for sexual abuse, in *Colleen L. v. Howard M.* (1989) 209 Cal.App.3d 542 (*Colleen L.*). The plaintiff in that case sued her stepfather under an early version of section 340.1, which provided a three-year limitations period for civil actions based on sexual abuse of a child under the age of 14. She sued right before she turned 18, but more than three years after the abuse occurred, and the stepfather was granted summary judgment on the ground that the limitations period had expired. Relying on both *Williams* and *Jessica H.,* the *Colleen L.* court held that actions under section 340.1 were tolled by section 352 even though such tolling was not mentioned in the statute. (*Id.* at pp. 544-546.)

Construing section 352 to apply here because liability under the Act is mentioned in section 338 as a liability created by statute is both consistent with these legal principles and vindicates the strong public policy in favor of protecting minors' rights through the tolling provision. Although children, including the unborn, are clear beneficiaries of the Act, the majority's interpretation would likely bar redress for many such plaintiffs.

Children must depend on a parent or guardian to bring an action on their behalf. A child with a viable claim under the Act might not even know about the facts giving rise to his claim, much less the existence of the Act. This is especially so for a child whose claim arose from in utero exposure to drug use. What about a child whose claim flows through a drug-using parent who is imprisoned for his or her drug use, or a child placed in foster care as a result of drug-using parents? Even absent such circumstances, not all parents would be aware of the child's rights under the Act, and of those who do, some might be reluctant to incur the time, trouble, and potential expense of bringing an action on their child's behalf. I do not believe the Legislature had such a bizarre result in mind when it enacted the Drug Dealer Liability Act and expressly included children among those with standing to sue.

2.     *The Legislature Did Not Exclude Section 352 Tolling From the Act*

Subdivision (a) of Health and Safety Code section 11714 states that its one-year limitations period runs from the date unlawful drugs were furnished and applies "[e]xcept as otherwise provided in this section . . . ." Subdivision (b) supplies that exception, stating that the limitations period for a defendant "does not expire until one year after the individual potential defendant is convicted of a criminal offense involving an illegal controlled substance or as otherwise provided by law."

According to the majority, subdivision (b) is a tolling provision. It then invokes the *expressio unius et exclusio alterius* rule of statutory construction: when the Legislature sets forth certain exemptions in a statute, omitted exemptions are excluded and cannot be implied. (*Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 94.) The majority then concludes that the Legislature did just that in subdivision (b) of Health and Safety Code section 11714, thereby excluding any other form of tolling, including under section 352. It supports this conclusion with a portion of a Senate committee analysis of the Act, which said that under the bill "the statute does not expire until one year after a person is convicted of drug trafficking," and also referred to subdivision (b) as a "tolling provision." (Sen. Com. on Criminal Procedure, Analysis of Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as amended May 29, 1996, pp. t-u.)

*Williams* held that this rule of statutory construction did not apply to the statute of limitations for actions against public entities because "[i]n the absence of express statutory provision, courts will not find an implied abrogation of long established principles." (*Williams, supra,* 68 Cal.2d at p. 603.) Because the Legislature enacted section 342 along with its mention of actions against public entities as part of its general legislation on such claims, it "concurrently and clearly" mentioned such actions within the set of Civil Procedure code provisions applicable to section 352. Although Government Code section 945.6 both mentioned and limited the tolling period for prisoners, it "does not purport to qualify in any manner the tolling provisions of section 352 as to children." (*Williams* at p. 604.)

7

In accord with this principle, decisions which have held that tolling under section 352 or other similar provisions are excluded from a statute of limitations have done so only when the Legislature has made its intent clear.  For example, section 340.5 provides the limitations period for medical malpractice actions at the earlier of either three years from the date of injury or one year from when the plaintiff discovers his injury.  The statute provides that "[i]n no event shall the time for commencement of legal action exceed three years *unless tolled* for any of the following:  (1)  upon proof of fraud, (2)  intentional concealment, or (3)  the presence of a foreign body . . . in the person of the injured person."  (Italics added.)  Decisions interpreting this statute have held that the one-year limitations provision is subject to statutory tolling up to the outer limit of three years because the one-year provision does not contain the three express tolling provisions that qualify the outer three-year limitations period.  In contrast, the Legislature's use of the phrase "in no event," followed by the three express forms of tolling in the three-year limitations provision, was an express statement by the Legislature that any other forms of tolling beyond those stated the in three-year time limit were precluded.  (See *Alcott Rehabilitation Hospital v. Superior Court* (2001) 93 Cal.App.4th 94, 101-104, and cases cited therein.)[4]

Assuming for the sake of argument only that subdivision (b) of Health and Safety Code section 11714 is a tolling provision, I find it ambiguous and do not see a clear and express legislative intent to preclude other forms of tolling, particularly tolling for

---

[4]  The majority's reliance on *Blankenship v. Allstate Insurance Co., supra,* 186 Cal.App.4th 87 is also misplaced because, as that court itself acknowledged, it was construing a provision that governed the conditions precedent to the bringing of a cause of action against an insurer to recover under an auto insurance policy's uninsured motorists coverage, not a statute of limitations.  The court concluded that the statue in question, Insurance Code § 11580.2, did not involve a "civil action" as that term is used in section 352, a distinction noted in *Williams* as well.  (*Blankenship* at pp. 97-98.)  Properly viewed, *Blankenship* is not an application of tolling provisions in statutes of limitations at all.

8

minors. Ultimately, I conclude this rule of statutory construction has no application here because subdivision (b) creates, not a tolling provision, but an enlarged limitations period applicable to only certain defendants.

A tolling provision "stops the clock" from running and is distinguishable from an enlarged limitations period. (See *Woods v. Young* (1991) 53 Cal.3d 315, 325-326, & fn. 3 [construing provisions requiring notice to a health care provider before suing for malpractice as extending rather than tolling the statute of limitations].) Subdivision (b) does not mention tolling or a suspension of the limitations period. Instead, it states that the statute of limitations "does not expire" until one year after the defendant is convicted of a drug offense.[5]

Under Health & Safety Code section 11714, subdivision (a), a claim under the Act cannot be brought "more than one year after the defendant furnishes" the illegal drugs. Under subdivision (b) of that section, however, the statute of limitations "does not expire until one year after the individual potential defendant is convicted of a criminal offense involving an illegal controlled substance or as otherwise provided by law." These competing provisions seem confusing and contradictory, but I believe a reasonable construction may be found by examining them against other provisions of the Act.

Persons liable under the Act are those who "knowingly participate[] in the marketing of illegal controlled substances." (Health & Saf. Code, § 11704, subd. (a).) To participate in such marketing means to manufacture, transport, import into this state, sell, possess with intent to sell, furnish, administer, or give away illegal controlled substances. (Health & Saf. Code, § 11703, subd. (g).)

---

[5] Given that section 11714 does not even mention the words "tolling" or "tolled," it is hard to square the majority's conclusion with the holding in *Jessica H.* that "general tolling statutes apply to special time limitations for filing suit contained in *specific statutes* in the absence of an expression of legislative intent to contrary." (*Jessica H., supra,* 155 Cal.App.3d at p. 592.) In contrast when the Legislature has decided to preclude application of tolling statutes it has found a clear and express way to say it by using those very words. (See e.g. Code of Civil Procedure §§ 340.5, 366.2.)

Persons with standing under the Act may sue those who "sold, administered, or furnished an illegal controlled substance to the individual user of the . . . substance" (Health & Saf. Code, § 11705, subd. (b)(1)) and those "who knowingly participated in the marketing of illegal controlled substances . . . ." (Health & Saf. Code, § 11705, subd. (b)(2).) However, an action may not be brought against one who did not furnish the drug but instead knowingly participated in the marketing of illegal controlled substances under subdivision (b)(2) of Health and Safety Code section 11705 unless certain conditions are met, including: the defendant's participation in the marketing of illegal drugs was connected with the same type of drug taken by the individual user and "*the defendant [] has been convicted of an offense for that type of specified illegal [drug];*" and "[t]he underlying offense for the conviction of the specified illegal controlled substance occurred in the same county as the individual user's place of use." (Health & Saf. Code, § 11705, subd. (b)(2)(B),(D), italics added.)

Therefore, the Act distinguishes two groups of potential civil defendants: (1) Those who sell or furnish drugs to an individual user; and (2) those who participate in other marketing activities by requiring that the latter have been convicted of a drug offense arising from their participation. (Health & Saf. Code, § 11705, subd. (b)(2).) When viewed in this context, I believe Health & Safety Code section 11714 makes a similar distinction.

As I see it, the one-year time period of subdivision (a) applies to defendants who actually furnished the drug, as to whom no conviction is required as a predicate to liability under the Act. Subdivision (b) applies a differently calibrated one-year limitations period to "individual potential defendant[s]," which I believe refers to defendants whose liability under the Act is based on marketing participation activities apart from selling or furnishing drugs to the individual user. Because a conviction for a drug-related offense arising from their marketing participation activities is a condition precedent to liability under the Act, this subdivision sets them apart as *potential defendants* by providing a one-year limitations period that runs from the date of any

10

conviction. This makes sense because until and unless such *potential* defendants are convicted, they cannot be held liable under the Act.

Therefore the point of subdivision (b) is to create a different limitations period for claims against a subcategory of potential defendants. It does so by enlarging the statute of limitations to allow time for marketing participation defendants to be charged and tried for their activities if they have not already received a qualifying conviction, and by giving plaintiffs one year from that date to sue. In this sense the statute of limitations in Health and Safety Code section 11714 is akin to the childhood sex abuse statute of limitations, which provides for an age 26 cut-off on the statute of limitations against certain defendants, but provides a longer limitations period against the actual perpetrator of abuse and entity defendants who had reason to know of the perpetrator's sexual abuse. (§ 340.1, subds. (a)(1),(2)&(3), (b)(1),(2).)

My interpretation is bolstered by a fuller examination of the Act's legislative history. The evolution of a proposed statute after its original introduction is relevant to showing legislative intent. (*Conservatorship of Bryant* (1996) 45 Cal.App.4th 117, 128.) An amendment that deletes certain language and replaces it with different terms creates a presumption that the Legislature intended a different meaning and effect. (*Id.* at p. 129.) Legislative rejection of specific language in an act as originally introduced is persuasive evidence the act should not be construed to include the omitted language. (*Id.* at p. 130.)

When first introduced on February 22, 1996, the proposed version of section 11714, subdivision (a) called for a two-year limitations period that ran from the time the plaintiff had reason to know he had been harmed by the defendant's act of furnishing unlawful drugs. Proposed subdivision (b) stated, "For a plaintiff, the statute of limitations under this section *is tolled*" while the plaintiff was incapacitated by his use of illegal drugs, and, for a defendant, the statute of limitations "*was tolled*" until six months after his conviction of a drug offense. (Legis. Counsel's Dig., Sen. Bill No. 1754 (1995-1995 Reg. Sess.) Feb. 22, 1996, italics added.) On May 29, 1996, the Act's limitation provision was amended into its current form, omitting all references to tolling in subdivision (b). (Legis. Counsel's Dig., Sen. Bill No. 1754 (1995-1996 Reg. Sess.) as

11

amended May 29, 1996.)  In short, the bill as originally introduced included what was expressly described as a tolling provision, but that language was deleted and replaced with language that enlarged the limitations period for certain defendants.[6]

Based on this I conclude the Legislature did not intend subdivision (b) of Health and Safety Code section 11714 to serve as a tolling provision.  Instead, as set forth above, it enlarges the limitations period for certain defendants under certain circumstances.  As a result, the provision is subject to the principle of *Williams, supra,* 68 Cal.2d 559, that absent an express legislative limitation on the applicability of section 352, tolling for minors is available under the Act.  Therefore I would reverse the trial court's judgment.

**CONCLUSION**

Nothing in section 352 states or even remotely suggests that it does not apply to actions upon a statutory liability that include an internal limitations period unless the Legislature expressly declares that it does.  I believe the majority has announced a new rule that undermines the special protections afforded to minors under section 352.  Even though this new rule seems odd enough when applied to the Drug Dealer Liability Act, which was intended to benefit children, its implications extend far beyond the Act and extend to all actions upon a statutory liability, many of which have their own statutes of limitations "scattered throughout the many special codes."  (5 Witkin, Cal. Procedure, *supra,* Actions, § 431, p. 542)  If I am right, the majority's error should be corrected.  If the majority is right, then for statutory liabilities where the Legislature intended that section 352 apply, but did not say so in the statute's internal limitations provision, remedial legislation would be necessary to correct the oversight.  In either case, I urge the

---

**6**     That change probably explains why the Senate committee analysis quoted by the majority confusingly referred to proposed section 11714 subdivision (b) as both a tolling provision and the time at which the limitations period expired.

12

Supreme Court to clarify this matter. (*People v. Knox* (2004) 123 Cal.App.4th 1453, 1464 (dis. opn. of Bammatre-Manoukian, J.).)



RUBIN, J.