Filed 4/29/14  Lanham v. County of Los Angeles CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GORDON LANHAM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B252156<br><br>(Los Angeles County<br>Super. Ct. No. BC508840) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Gordon Lanham, in pro. per., for Plaintiff and Appellant.

John F. Krattli, County Counsel, Narbeh Bagdasarian, Deputy County Counsel; Pollak, Vida & Fisher and Daniel P. Barer for Defendants and Respondents.

\* \* \* \* \* \*

Plaintiff Gordon Lanham appeals pro se a judgment following the sustaining of a demurrer and dismissal of his complaint against the County of Los Angeles, LAC+USC Medical Center (LAC+USC), and several LAC+USC employees without leave to amend. We affirm.

## BACKGROUND

Plaintiff filed a complaint against the County of Los Angeles, LAC+USC, and several LAC+USC employees solely in their official capacities (together the County), alleging violations of provisions in the Health and Safety Code governing patient access to health records (the Patient Access Law). (See Health & Saf. Code, § 123100 et seq.[1]) Plaintiff alleged he had mailed a series of requests for his medical records to LAC+USC on May 8, May 12, and May 30, 2012, but did not receive a response. He attempted calling the medical records department, but his calls went unanswered. After two or three weeks of calls with no resolution, he sent another request on June 25, 2012. He waited another two weeks without receiving a response. On July 25, 2012, he called every department seeking his medical records. He got in touch with LAC+USC's Chief Executive Officer, but after he explained his complaint, the telephone went dead and repeated calls to the telephone number indicated the number was no longer in service. He also got in touch with LAC+USC's Chief Operating Officer, but the result was the same—the line promptly went dead when he explained his complaint. After more telephone calls, transfers, and waiting on hold for 30 minutes, plaintiff finally spoke with someone named Pamela in the records department, and she told him he could request his records through her.

On August 3, 2012, plaintiff received a small portion of his records, but he did not receive the financial portion, despite having requested all his records. On August 5, 2012, plaintiff sent another request for a copy of his complete records, but they were

---

[1] All undesignated statutory citations refer to the Health and Safety Code unless otherwise noted.

2

not sent.  Plaintiff sent another request on September 26, 2012, and he finally received the financial portion of his records on November 3, 2012.  That was 90 days after his August 5, 2012, request for copies of his complete records, more than 100 days after he spoke with Pamela in the records department on July 25, 2012, and nearly 180 days after he mailed his original request on May 8, 2012.  It appears he has received all the records he was seeking.

Based on these facts, plaintiff made an administrative claim against LAC+USC, which was rejected.  He then filed a civil complaint alleging the County violated its own policies and sections 123100 and 123110, subdivision (b) of the Patient Access Law by belatedly producing his medical records.  He sought general and punitive damages, costs, and "further relief as this Court deems just and proper."  He did not seek an injunction or other equitable remedy.

The County demurred to the complaint, arguing plaintiff did not have standing to sue for damages under sections 123100 and 123110, subdivision (b) of the Patient Access Law.  Plaintiff opposed and the court held a hearing on August 27, 2013, that was not transcribed.  The court sustained the demurrer without leave to amend and entered judgment accordingly.[2]  Plaintiff timely appealed.

## DISCUSSION

We review the trial court's sustaining of a demurrer de novo to determine whether, as a matter of law, the complaint alleges a valid cause of action.  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506.)  We assume the truth of all properly pleaded and judicially noticeable material facts, but we will not assume

---

[2]  The trial court provided no explanation for its ruling, even though it was required to "include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based which may be by reference to appropriate pages and paragraphs of the demurrer." (Code Civ. Proc., § 472d.) Nonetheless, plaintiff waived this error because there is nothing in the record to suggest he brought it to the court's attention. (*Ibid.*; see *E.L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504, fn. 2.)

3

the truth of contentions, deductions, or conclusions of law. (*Ibid.*) If the complaint fails to state a claim, the plaintiff bears the burden to demonstrate there is a reasonable possibility the defects can be cured by amendment. (*Id.* at pp. 506-507.)

The Patient Access Law is set forth in a chapter of the Health and Safety Code entitled "Patient Access to Health Records." (§ 123100 et seq.) Section 123100 states its purpose: "The Legislature finds and declares that every person having ultimate responsibility for decisions respecting his or her own health care also possesses a concomitant right of access to complete information respecting his or her condition and care provided. Similarly, persons having responsibility for decisions respecting the health care of others should, in general, have access to information on the patient's condition and care. It is, therefore, the intent of the Legislature in enacting this chapter to establish procedures for providing access to health care records or summaries of those records by patients and by those persons having responsibility for decisions respecting the health care of others."

Section 123110 states in relevant part, "(a) Notwithstanding Section 5328 of the Welfare and Institutions Code, and except as provided in Sections 123115 and 123120, any adult patient of a health care provider . . . shall be entitled to inspect patient records upon presenting to the health care provider a written request for those records and upon payment of reasonable clerical costs incurred in locating and making the records available. . . . A health care provider shall permit this inspection during business hours within five working days after receipt of the written request. The inspection shall be conducted by the patient or patient's representative requesting the inspection, who may be accompanied by one other person of his or her choosing. [¶] (b) Additionally, any patient or patient's representative shall be entitled to copies of all or any portion of the patient records that he or she has a right to inspect, upon presenting a written request to the health care provider specifying the records to be copied, together with a fee to defray the cost of copying, that shall not exceed twenty-five cents ($0.25) per page or fifty cents ($0.50) per page for records that are copied

4

from microfilm and any additional reasonable clerical costs incurred in making the records available.  The health care provider shall ensure that the copies are transmitted within 15 days after receiving the written request."**3**

Section 123120 provides, "Any patient or representative aggrieved by a violation of Section 123110 may, in addition to any other remedy provided by law, bring an action against the health care provider to enforce the obligations prescribed by Section 123110.  Any judgment rendered in the action may, in the discretion of the court, include an award of costs and reasonable attorney fees to the prevailing party."

The County focuses on the fact that plaintiff brought his claims directly under sections 123100 and 123110, subdivision (b) in his complaint, not section 123120, which creates a statutory basis to privately enforce section 123110, as we discuss below.  Giving plaintiff a generous interpretation of his complaint, we think plaintiff could allege his claims under section 123120.  Thus, our question is whether section 123120 creates a private right of action for plaintiff to seek damages for the County's failure to timely provide copies of his medical records under section 123110, subdivision (b).  This is an issue of statutory interpretation and we are guided by familiar principles.**4**  "'[O]ur goal is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law."'  [Citation.]  First, we must look to the words of the statute, which generally provide the most reliable indicator of legislative intent.  [Citation.]  If the statutory language is unambiguous, then we presume the Legislature meant what it said and our

---

**3**     Neither plaintiff nor the County states whether plaintiff paid these costs.  For the purpose of the County's demurrer, we will presume plaintiff paid these costs or was excused from doing so.

**4**     As a public entity, the County is not liable for injuries except as provided by statute.  (Gov. Code, § 815; *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785, fn. 2.)  Because the dispositive question here is whether section 123120 creates a private right of action to seek damages at all, the County's public entity status does not impact our analysis.

inquiry ends.  [Citation.]  We give words in a statute their plain and common sense meaning, and we avoid a construction that would produce absurd results, which we presume the Legislature did not intend.  [Citation.]  We also 'do not construe statutes in isolation; rather, we construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided.'  [Citation.]"  (*Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1454.)

Because violation of a statute does not necessarily give rise to a private cause of action, whether a statute creates a private right to sue "depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute.  [Citations.]  Such legislative intent, if any, is revealed through the language of the statute and its legislative history.  [Citation.]"  (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596.)  A statute may contain "'"clear, understandable, unmistakable terms,"'" which strongly and directly indicate that the Legislature intended to create a private cause of action.  [Citation.]  For instance, the statute may expressly state that a person has or is liable for a cause of action for a particular violation.  [Citations.]  Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action.  [Citations.]  If, however, a statute does not contain such obvious language, resort to its legislative history is next in order.  [Citations.]"  (*Id.* at p. 597, fn. omitted.)

The plain language of section 123120 creates a private right of action "against a health care provider *to enforce the obligations prescribed by Section 123110.*"  (Italics added.)  Read in light of the legislative intent expressed in section 123100 that patients have a "right of access to complete information respecting his or her condition and care provided," section 123120 clearly and unmistakably creates a private right of action to compel a health care provider to provide access to and copies of medical records upon request under section 123110, subdivisions (a) and (b).  But because plaintiff eventually obtained copies of all his records as he requested, we must decide

6

whether the Legislature also intended to create a private right of action for damages for untimely compliance.  We think it did not.

The language of section 123120 demonstrates the Legislature intended to create only a narrow right to sue to compel compliance with section 123110.  Black's Law Dictionary defines "enforce" as, "to give force or effect to (a law, etc.); to compel obedience to" (Black's Law Dictionary (9th ed. 2009) p. 608, col. 2), which is consistent with confining the right of action to compelling compliance with section 123110.  Further, an aggrieved patient's right to bring an action to enforce the obligations in section 123110 is "in addition to any other remedy provided by law," suggesting the Legislature was creating only a narrow injunctive remedy when access to medical records has been withheld or copies have not been provided while leaving other remedies for untimely compliance, including damages, to other laws that might apply.

Section 123120 must also be read in light of the stated purpose of the Patient Access Law, which seeks to support a patient's "ultimate responsibility for decisions respecting his or her own health care" by creating a "right of access to complete information respecting his or her condition and care provided."  (§ 123100.)  To do so, the Legislature intended to establish "procedures for providing access" to health care records.  (*Ibid.*)  Given the Legislature's focus on ensuring patients' access to medical records, we are reluctant to infer a more expansive right to recover damages once a patient has been given access to and copies of his or her medical records, even if that occurs beyond the statutory deadlines.

Other sections of the Patient Access Law reinforce this conclusion.  Section 123145, subdivision (a) requires certain licensed health care providers that cease operations to preserve patient records for at least seven years after the patient is discharged.  Subdivision (b) of that section provides that "any person injured as a result of the licensee's abandonment of health records may bring an action in a proper court *for the amount of damage suffered as a result thereof.*"  (§ 123145, subd. (b),

7

emphasis added.) "'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.'" (*In re Jennings* (2004) 34 Cal.4th 254, 273.) Having expressly permitted suits for damages for a health care provider's failure to preserve medical records, the Legislature must have intended to exclude similar actions for untimely compliance with section 123110 by not mentioning them in section 123120. This conclusion is particularly apt here, given section 123145, subdivision (c) refers to section 123110 by defining "[a]bandoned" to mean "violating subdivision (a) and leaving patients treated by the licensee without access to medical information to which they are entitled pursuant to Section 123110."

Moreover, the Patient Access Law contains punitive consequences for willful violations, which would encourage health care providers to abide by the time limits in section 123110 without also reading a private right to sue for damages into section 123120 for untimely compliance. Certain licensed health care providers who willfully violate the Patient Access Law are "guilty of unprofessional conduct." (§ 123110, subd. (i).) Similarly, certain institutional health care providers that willfully violate the Patient Access law are "guilty of an infraction punishable by a fine of not more than one hundred dollars ($100)." (*Ibid.*) For all of those entities, "[t]he state agency, board, or commission that issued the health care provider's professional or institutional license shall consider a violation as grounds for disciplinary action with respect to the licensure, including suspension or revocation of the license or certificate." (*Ibid.*)

Finally, we are not the only court to interpret section 123120 to preclude an action for damages for untimely compliance with section 123110. (*Maher v. County of Alameda* (2014) 223 Cal.App.4th 1340, 1354 ["[T]he Patient Access Law . . . contains no express language authorizing an award of consequential damages[,]" but instead "contemplates a proceeding to secure access to one's medical records, and a

8

discretionary award of attorney fees and costs to the prevailing party in that proceeding. We do not believe section 123120 authorizes the remedy [the plaintiff] seeks -- an award of prelitigation attorney fees or investigation costs as consequential damages for the failure to timely provide access to medical records."].) Thus, no private right of action exists under section 123120 for damages for the County's belated production of copies of plaintiff's medical records. Because plaintiff's claim is legally flawed, there is no reasonable possibility he could cure the defects in his complaint by amendment and the trial court properly denied leave to amend.

## DISPOSITION

The judgment is affirmed. Each party to bear their own costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.


9